UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-332-H

JAMES BROCKMAN, et al.                                          PLAINTIFFS

V.

BARTON BRANDS, LTD., d/b/a                                      DEFENDANT
BARTON BRANDS, CO.

**MEMORANDUM OPINION**

Plaintiffs are all residents of areas surrounding Defendant's distillery, who have filed suit against Defendant seeking monetary and injunctive relief for damage allegedly resulting from fallout and noxious odors emitted by that facility.  Specifically, Plaintiffs proceed under theories of nuisance, negligence and/or gross negligence, strict liability for ultrahazardous activities, and trespass.  Some time ago, Plaintiffs indicated that they would seek class certification.  The Court set aside six months for discovery on that very issue and set a hearing date.  Plaintiffs have filed a memorandum supporting their motion for class certification and Defendant has objected.

After receiving the supporting memorandum, holding a hearing and after evaluating the evidence, the Court finds the motion to be deficient in several significant ways.   Therefore, the Court will deny the motion at this time.

I.

Plaintiffs, four residents of the area surrounding Defendant's Bardstown, Kentucky facility, have alleged that emissions from Defendant's operations in its nearby plant have invaded their property in the form of particulate matter ("fallout") and noxious odors.  The

fallout is described as blanketing Plaintiffs' property, and is characterized variably as black soot, black ash, black particles, black rain, black mold, black mud, black fungus, and a black oily substance.  Some proposed class members describe the substance as growing.  Descriptions of the odors are similarly varied, including a sweet smell, pungent sulfur, yeast, foul and disgusting, raw sewage, rotten eggs, liquor, sour mash, fruity, and a sewer smell.

Plaintiffs seek certification under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure of a class defined as follows:

> Owners or residents of single family residences within two miles of the Barton Brands facility, who allege the invasion of their property by noxious odors, fallout, pollutants and contaminants which originated from the Barton Brands facility located in Bardstown, Kentucky and who have owned or resided at that single family residential home from July 11, 2003 to the present and continuing and who claim damage therefrom.

Plaintiffs' Motion for Class Certification at ¶ 3.  Plaintiffs estimate that this class may consist of as many as 5,864 people or more, and assert that for this and other reasons, the requirements of Rules 23(b)(2) and 23(b)(3) are met.

Defendant is a producer of distilled spirits.  At its Bardstown distillery, Defendant's operations are powered by a coal-fired boiler, the running of which results in emission of some amount of chemicals and particulate matter.  Defendant has opposed class certification, arguing among other things that the proposed class definition is flawed and that individual issues will predominate over common ones, making Plaintiffs' claims unsuited for class adjudication.

II.

A district court has broad discretion in determining whether class certification is appropriate, *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988), but in arriving at that determination the court has no authority to "conduct a preliminary inquiry into the merits of a suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). However, "sometimes it is necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also* Manual for Complex Litigation (Fourth) § 21.14 (2004). As such, the Court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 are met. *Falcon,* 457 U.S. at 161. Plaintiffs have the burden to prove the requisite elements of class certification under either or both of Rules 23(b)(2) and (b)(3). *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Falcon*, 457 U.S. at 161).

To meet the requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. *Olden v. LaFarge Corp.,* 383 F.3d 495, 507 (6th Cir. 2004) (citing Fed R. Civ. P. 23(a)). Courts often refer to the 23(a) requirements as numerosity, commonality, typicality and adequacy of representation. Once certified, a class may be altered, expanded, subdivided, or even vacated. *See* Fed. R. Civ. P. 23(c)(1), 23(c)(4)(B). But again, plaintiffs carry the burden to plead a sufficient basis for certification. *Tucker v. Union Underwear Co., Inc.,* 144 F.R.D. 325, 327 (W.D. Ky. 1992) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976)).

This Court will address each Rule 23(a) requirement in turn.  Before doing so, however, the Court must consider an overriding concern particular to the type of class proposed here.

### A.

"Although not specifically mentioned in [Rule 23], the definition of the class is an essential prerequisite to maintaining a class action." *Adams v. Fed. Materials Co.,* 2006 WL 3772065 at *3 (W.D. Ky. 2006) (quoting *Gevedon v. Purdue Pharma,* 212 F.R.D. 333, 335 (E.D. Ky.2002)). The description must be "sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure,* § 1760, at 120-21 (2d ed.1986).  Moreover, "[b]efore delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Bentley v. Honeywell Int'l, Inc.,* 223 F.R.D. 471, 477 (S.D. Ohio 2004).

A survey of proposed classes in other environmental mass tort cases is instructive.  Often an objective characterization of exposure to a particular substance defines class members.  Other times, courts define classes by geographical boundaries, but in such circumstances, courts often seek a reasonable relationship between the proposed boundary and the defendants' allegedly harmful activities.  Regardless, courts have rejected proposed classes where plaintiffs failed to "identify any logical reason...for drawing the boundaries where they did." *See, e.g., Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo. 1990) (holding that plaintiffs had "failed to identify a class" where the proposed boundaries did not appear to "relat[e] to the defendants' activities").  Usually, scientific or objective evidence closely ties the spread of the alleged pollution or

4

contamination to the proposed class boundaries.  *See, e.g.*, *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 61 (S.D. Ohio 1991).  In considering such a class involving radioactive materials, the *Boggs* court observed:

> [t]he fact that radioactive materials have escaped the confines of the plant, is, by itself, not sufficient to justify defining the class to include everyone who lives or owns property within six miles of the plant's boundaries.  Although the class definition is subject to refinement . . . there should be some evidence at this stage of the case that plaintiffs' definition is reasonable. *This requires an examination of the plaintiffs' evidence of the dispersion of hazardous emissions*.

*Id.* at 61–62 (emphasis added).  In *Boggs,* plaintiffs supported their proposed class with expert testimony that the released radioactive materials extended to at least a six-mile radius.  *Id.*  This expert testimony demonstrated that the level of exposure within the radius would differentiate plaintiffs from "more distant members of the public," and that therefore, the six-mile radius class definition bore a "reasonable relationship to the evidence of record." *Id* at 62.  The *Boggs* court made clear it was not seeking evidence regarding "the amount and effect of [contaminant] dispersion," *id.* at 61, but merely "evidence that the plant has discharged [contaminants] beyond its borders," as well as evidence that "those substances [had] traveled up to six miles," *id.*, which would allow it to conclude that there was such a "reasonable relationship" and that the "definition of the class is sufficiently definite to permit analysis of the Rule 23 factors."  *Id.* at 62.

Similarly in another case, plaintiffs seeking recovery from alleged dioxin pollution limited the proposed class to those persons within "'confirmed dioxin sites' as described in the final report of the Missouri Dioxin Task Force." *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987).  The district court expressly refrained from "ruling on the validity"of the Task

5

Force's determination of dioxin exposure (a merits issue), but could be confident that the class

definition was appropriate given the determination, as in *Boggs*, that a contaminant from the

defendant's activities had at least potentially caused the complained-of harm.  More recently, a

Colorado district court approved a class of property owners within a defined "plutonium

contour," modeling its inquiry on *Boggs* and finding that by virtue of this defined contour, the

proposed class definition before it was distinguishable from that proposed in *Daigle*.  *Cook v.*

*Rockwell Int'l Corp.*, 151 F.R.D. 378, 383–84 (D. Colo. 1993).  And in *LaBauve v. Olin Corp.,*

231 F.R.D. 632, 638 (S.D. Ala. 2005), the court certified a subclass based on scientific air

dispersion modeling that indicated a fixed geographical zone of a chemical plant's airborne

contaminants.

   By contrast, courts have often declined to certify proposed classes where "no evidence

establishes a connection between defendants' conduct and the proposed class boundaries."  *See,*

*e.g. Daigle,* 133 F.R.D. at 602-03 (denying certification of class alleging exposure from toxic

waste disposal pond contaminants where scope of proposed class was not defined by defendants'

activities, but instead by "arbitrarily . . . drawn lines on a map."); *Duffin v. Exelon Corp.*, 2007

WL 845366 (N.D. Ill. March 19, 2007) (denying certification of a proposed class alleging

damage from release of hazardous tritium because the proposed class was defined in "geographic

terms unrelated to actual tritium contamination....[since] there was no probative evidence of

class-wide contamination justifying a 25 square mile class encompassing over 2,500 properties

and 6,500 residents").  In *Duffin*, the district court noted that "Plaintiffs have failed to provide

evidence that tritium contamination is present throughout the class area," *id.* at *5, and expressly

distinguished between a determination that property damage had occurred (a merits issue) and a

determination that properties in the class area were even potentially contaminated. *Duffin*, 2007 WL 845336, at *3–5. Moreover, courts have resisted class certification where plaintiffs fail to consider facts such as wind and water runoff in defining the class. *See, e.g., Blake v. Chemlawn Svcs. Corp.*, 1998 WL 6151 (E.D. Pa. 1998); *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 597 (M.D. Pa. 1997).

As noted above, Rule 23 does not explicitly command evaluation of the proposed class definition, and even where such an evaluation is conducted, courts have in some cases been satisfied by nothing more than a showing that determination of class membership will be "administratively feasible," *see, e.g., Ramik v. Darling Int'l*, No. 98-40276 (E.D. Mich. May 17, 1999)[1], since this showing "more easily allow[s] the court to determine who is entitled to relief, who would be bound by a judgment, and who is entitled to notice of the action." *Id.* at *5. However, some courts have examined the class definition more closely as a threshold issue, probably because a flawed class definition will affect the Rule 23 analysis. This Court believes this latter approach is more prudent.

Here, the Court has searched the record and repeatedly pressed Plaintiffs' counsel during oral arguments, seeking an evidentiary relationship between the geographic boundaries of the proposed class definition and the alleged exposure zone of pollution. Though Plaintiffs repeatedly describe the proposed class definition as "objectively reasonable," they offer no evidence whatsoever that the airborne contaminants spread in a uniform fashion in all directions from Defendants' facility for a distance of up to two miles, or that the contaminants complained

---

[1]In another case heavily relied upon by Plaintiffs, the district court conducted no such threshold inquiry. *Olden v. LaFarge Corp*., 203 F.R.D. 254 (E.D. Mich. 2001). While, as will be discussed further below, this approach was not deemed an abuse of discretion by the Sixth Circuit, *Olden*, 383 F.3d 495, it also does not compel this Court to forego the threshold inquiry conducted by other courts confronted with similar evidence.

of by proposed class members bear a relationship to Defendant.[2]  Indeed, after some six months

of supposed class discovery, what is most startling about Plaintiffs' motion for class certification

is the near-total lack of evidence linking the fallout and/or odors about which Plaintiffs complain

to the substances emitted by Defendant, such as was present, for example, in *Boggs*.  At bottom,

Plaintiffs' motion rests upon complaints of residents in the Bardstown area about various

substances and odors on their property, a recital of the emissions of the Defendant's facility, and

Dr. Wabeke's report that it is possible that emissions from Defendant's plant could be related to

those substances.[3]  Nowhere in Plaintiffs' evidence has the Court found, for example, test results

---

[2]Though less important at the certification stage, the Court notes that Plaintiffs also do not explain how the proposed two-mile-radius boundary takes into consideration Plaintiffs' proximity to other pollution-emitting facilities in the area, including Bardstown Mills, the Bardstown Wastewater Treatment Plant, and the Heaven Hill Distillery.

[3]Plaintiffs proffer the report of Dr. Roger L. Wabeke, Plaintiff's Exhibit 21, and argue that it establishes the causal linkage otherwise absent from Plaintiffs' evidence.  Review of Dr. Wabeke's report reveals that it in no way fills this evidentiary gap.  Strikingly (given the purpose for which it is now being offered), Dr. Wabeke's analysis appears to have relied entirely on documents supplied by Plaintiffs' counsel, including Plaintiffs' questionnaires, Plaintiffs' pleadings, various public documents describing the amount of pollutants emitted by Defendant, newspaper articles, a map of Bardstown, and a map of the proposed class area.  To Dr. Wabeke's credit, he devotes the majority of his report to describing the general aspects of coal combustion and the health risks of inhaling ethyl alcohol.  More troubling is his "summary," in which before chastising Defendant for among other things "fail[ing] to conduct fair due diligence investigations into neighbors' complaints," he concludes that "to a reasonable degree of scientific certainty, the claims of these residents are supported, in my view, to be [sic] attributable to uncontrolled emissions of toxic and irritating air contaminants emitted from the defendant's distillery and environs."
    The muddled nature of the latter quotation leaves the Court with two plausible interpretations of Dr. Wabeke's "conclusion": One reading is that Dr. Wabeke may simply be stating that it is *possible* that Plaintiffs' claims will ultimately be proven true (i.e. that it is not *im*possible that Plaintiffs' complaints are valid), since the substances emitted by Defendant's plant could conceivably result in the problems of which Plaintiffs complain.  If that is the intended import of his "conclusion," then the Court wholeheartedly agrees, but finds that this conclusion falls woefully short of establishing the necessary evidentiary link between Plaintiffs and Defendant.  That is, while helpful for establishing that general causation could be determined on a classwide basis, the report still fails to show or even intimate that specific causation (and therefore Defendant's liability) might be determined on a classwide basis.
    Alternatively, one might read Dr. Wabeke's "conclusion" more broadly as stating that Defendant's emissions definitively caused the problems of which Plaintiffs complain, i.e. as purporting to establish a basis upon which the Court could conclude that specific causation, and therefore Defendant's liability, could be adjudicated on a classwide basis.  But given that Dr. Wabeke apparently did not so much as set foot on a single Plaintiff's property, much less sample and test the fallout allegedly found thereon, the Court cannot lend credence to such a sweeping conclusion.  Thus the Court finds Dr. Wabeke's report to be at best accurate yet insufficient, and at worst conclusory and without basis.
    It is also worth noting that the Court's conclusions in this regard are echoed by the evaluation of Dr.

for any substances Plaintiffs allege have fallen onto their property, or any sort of analysis of where the emissions of Defendant's plant spread once they leave Defendant's smokestack. These omissions are particularly glaring given how seemingly easy it would be for Plaintiffs to have obtained such information and how frequently such information plays a key role in class certification decisions for other courts in similar cases.

To be clear, the Court is not troubled by the mere possibility of individualized or non-uniform damage calculations, but rather by the lack of evidence "that something occurred to distinguish the members of the [proposed] class from the general public." *See Bentley,* 233 F.R.D. at 479 (S.D. Ohio 2004) (citing *Boggs*, 141 F.R.D. at 60). This evidentiary shortcoming, as will be seen below, weakens Plaintiffs' case for certification at numerous stages of the Rule 23 analysis, which is why the Court finds it appropriate to make note of it at the outset. But given that proper class definition is not made an explicit stand-alone requirement by the text of Rule 23, the Court will proceed to consider the enumerated factors of Rule 23(a) and the additional requirements of Rules 23(b)(2) and (3). Throughout this analysis, the ramifications of what this Court has characterized as an improper class definition will be evident.

### B.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re*

---

Wabeke's report performed by Trinity Consultants. Defendant's Exhibit 12. The Court stresses that this observation is merely intended to reinforce the Court's belief that either way one views Dr. Wabeke's report, it is wholly insufficient to overcome the evidentiary gap in the showing required of Plaintiffs. The Court emphatically distinguishes its arrival at a view of Dr. Wabeke's report, which is echoed by Defendant's expert report, from the sort of "statistical dueling" warned against in *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999). Unlike in *Caridad*, where the district court "relied," *id.* at 293, on the defendant's expert testimony in denying class certification, here the Court relies on nothing more than its own objective appraisal of the significant infirmities of Dr. Wabeke's report, and far from conducting any impermissible "weighing of the evidence," *id.*, the Court merely notes that similar conclusions were reached by Defendant's experts.

9

*Am. Med. Sys., Inc.,* 75 F.3d at 1079 (6th Cir. 1996). Nonetheless, while "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950. 966 (6th Cir. 2005) (quoting *McGee v. E. Ohio Gas Co.,* 200 F.R.D. 382, 389 (S.D. Ohio 2001)).

As this Court has noted, "numerosity...is inextricably bound up in the question of class definition." *Paulley v. Chandler*, 2000 WL 33975579 *1 (W.D. Ky. 2000). As such, it is often difficult to determine whether a class defined by geographical boundaries could satisfy the numerosity requirement. Several courts faced with overbroad proposed classes have rejected plaintiffs' numerosity arguments on these grounds. For example, in *Duffin*, after rejecting the proposed class definition as "arbitrarily drawn", the court dispensed with the plaintiffs' numerosity claim since there was no evidence to show contamination throughout the proposed class area. *Duffin,* 2007 WL 845366, at *5. Similarly, despite the fact that 65 individuals had signed fee arrangements with attorneys in an action alleging damage from methane contamination, a district court found that since most of the plaintiffs resided in a confined section of the total proposed class area, the plaintiffs had not provided sufficient evidence that their class satisfied the numerosity requirement. *Dippery v. Amoco Prod. Co.*, 1995 WL 478948 at *2 (D.N.M. 1995).

Here, the proposed class would include "at least 5,864" Plaintiffs. Plaintiffs' Motion for Class Certification at ¶ 3.[4] If all 5,864 belong in the class, the Court would find that Plaintiffs have easily met the numerosity requirement, since even a much smaller class could satisfy this requirement. S*ee Senter*, 532 F.2d at 522–23. However, for reasons noted above it is unclear

---

[4]Plaintiffs also express a "belie[f] that there are over 18,172 potential class members." Plaintiffs' Motion for Class Certification at 21.

how many of these 5,864 individuals properly belong in the class.  Thus, a more objectively

defined class or a geographically defined class based upon better evidence is quite likely to meet

the numerosity requirement, and the Court will not deem Rule 23(a)(1) to be a barrier to class

certification at this time.

C.

The commonality requirement of Rule 23(a) generally will be satisfied where there is a

"single issue common to all members of the class." *In re Am. Med. Sys.,* 75 F.3d at 1080.  The

requirement seeks "a common issue the resolution of which will advance the litigation." *Sprague*

*v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  Here, Plaintiffs assert that common

issues of fact include:

> (1)  the cause of Barton Brands' emissions; (2) whether Barton
> Brands's [sic] emissions were foreseeable; (3) were there any
> precautions Barton Brands could have taken to have prevented the
> emissions; (4) whether Barton Brands exercised any available
> precautions to prevent the emissions; (5) the amount of Exemplary
> Damages the Plaintiff Class is entitled to from Barton Brands; and
> (6) the type of economic impact Barton Brands' emissions had
> upon the Plaintiff class.

Plaintiffs' Motion for Class Certification at 23.  According to Plaintiffs, the common questions

of law include whether Defendant is liable for nuisance, negligence, gross negligence, trespass,

or strict liability, whether the Plaintiff Class is entitled to exemplary damages, and whether the

Plaintiff class is entitled to injunctive relief.  *Id.*  Given that Plaintiffs seem to have satisfied the

commonality requirement by identifying questions of law and fact that ostensibly lend

themselves to adjudication on a classwide basis, the Court finds that Plaintiffs meet the

requirements of Rule 23(a)(2).

11

D.

A plaintiff's claim may be considered typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.* 75 F.3d at 1082.  The representative plaintiffs' interests should be aligned with those of the proposed class, such that "as goes the claim of the named plaintiff, so go the claims of the class," *Sprague,* 133 F.3d at 399, and "in order to find typicality and commonality, the precise nature of the various claims must be examined....the typicality requirement is not met if the named plaintiffs do not represent an adequate cross-section of the claims asserted by the rest of the class."  *Reeb v. Ohio Dept. of Rehab. & Corr.*, 435 F.3d 639, 644–45 (6th Cir. 2006).

Since other class members' proximity to Defendant's facility or another facility will depend on their exact location within the proposed class area, the factual and legal issues of Defendant's liability as to each proposed class member likely could "differ dramatically from one plaintiff to the next." *See Daigle*, 133 F.R.D. at 600.[5]  While differences in amount or apportionment of damages alone will not defeat typicality, where a class definition is inappropriate it is difficult to determine of what group a class representative must be typical. Without more information than has been presented by Plaintiffs, it is impossible for the Court to conclude that the proposed representatives are "typical" of the class they purport to represent.

---

[5]This stands in contrast to the situation in, for example, *Boggs*, where the district court noted that "[t]he harm suffered by the named plaintiffs may differ in *degree* from that suffered by other members of the class so long as the harm suffered is of the same *type*."  *Boggs*, 141 F.R.D. at 65 (emphasis added).

The evidentiary failings here also stand in stark contrast to *Olden*, where "the defendant [did] not allege that the toxins from [other] sources are indistinguishable from the toxins from [its] plant" and the class was able to "show that their properties were frequently covered by cement dust," a contaminant directly attributable to the defendant. *Olden*, 383 F.3d at 508, 509 n. 5.  Typicality concerns are understandably reduced where a court can be assured that whatever trespass or nuisance has occurred, if any, was the result of the defendant's activities.

E.

The adequacy of representation inquiry under Rule 23(a)(4) seeks to discover conflicts of interest between named representatives and the class they seek to represent, s*ee Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997)*,* and "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  As the Supreme Court has noted, "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem*, 521 U.S. at 626 n.20 (quoting *Falcon*, 457 U.S. at 157 n.13 (1982)). The adequacy heading also factors in competency and conflicts of class counsel. *Amchem,* 521 U.S. at 626 n.20 (citing *Falcon*, 457 U.S. at 157–58 n.13).  Whatever differences among potential class members exist, they would not warrant a denial of class certification on grounds of adequacy of representation alone.

III.

In addition to meeting the four requirements of Rule 23(a), a purported class must meet at least one of the requirements of Rule 23(b).  Here, Plaintiffs have moved to certify their class under Rule 23(b)(2) as well as under Rule 23(b)(3).

Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate

13

final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Fed. R. Civ. P. 23(b)(2).  As the Fifth Circuit has explained, the Advisory Committee's note

indicates that:

> monetary relief predominates in (b)(2) class actions unless it is
> incidental to requested injunctive or declaratory relief.  By
> incidental, we mean damages that flow directly from liability to the
> class as a whole on the claims forming the basis of the injunctive
> or declaratory relief....such damages should at least be capable of
> computation by means of objective standards *and not dependent in*
> *any significant way on the intangible, subjective differences of*
> *each class member's circumstances*.  Liability for incidental
> damages should not require additional hearings to resolve the
> disparate merits of each individual's case; it should neither
> introduce new and substantial legal or factual issues, nor entail
> complex determinations.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (internal citations omitted)

(emphasis added); *see also Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 449 (6th

Cir. 2002).  The Sixth Circuit has noted additional problems inherent in certifying (b)(2) classes

"where monetary damages are at issue," since in such situations the notice and opt-out

protections present in the (b)(3) context are not required, yet the concerns motivating the

imposition of those protections for (b)(3) classes, such as the risk of unfairly depriving class

members of their Constitutional rights as to monetary damages, are pronounced.  *Reeb,* 435 F.3d

at 647 (citing *Allison,* 151 F.3d at 413).  Thus, as a general rule, a court should not certify a

(b)(2) class where individual damage issues may well predominate.

Our case occupies a middle ground between those cases in which injunctive relief clearly

predominates and those in which it clearly does not.  Plaintiffs seek various types of relief,

including compensatory as well as "any and all further relief, including injunctive and equitable

relief."  Complaint at ¶ 60(I).  Based upon the Court's knowledge of this case and others, an

14

important aspect of a potential remedy will be injunctive.  This observation, however, does not compel certification here.  The benefit of any injunctive relief granted to the named Plaintiffs presumably would be no different than injunctive relief under a (b)(2) certification.

In seeking (b)(2) certification, Plaintiffs have repeatedly referenced the unpublished district court decision in *Ramik*, No. 98-40276 (E.D. Mich. May 17, 1999), where a (b)(2) class defined as all residents of a city "who have allegedly suffered from Defendant's noxious odors," *id.* at 5, was certified.  This Court does not find the *Ramik* court's (b)(2) analysis particularly persuasive.  The district court limited its analysis to the text of Rule 23(b)(2), stopping short of inquiring as to whether injunctive or monetary relief would predominate, as the Advisory Committee notes and other courts seem to require.  Those courts and the Advisory Committee notes flesh out when injunctive relief is "appropriate," and frame the requisite inquiry in a manner which *Ramik* seemingly ignores.  The *Ramik* court appeared to be satisfied by the mere existence of a request for injunctive relief, regardless of whether that requested injunctive relief predominated over the damages requested by the plaintiffs.

Neither is Plaintiffs' reliance on *Olden's* (b)(2) analysis very persuasive.  In *Olden*, the Sixth Circuit admittedly evinced a reluctance to conduct a rigorous 23(b)(2) inquiry, but did so largely due to the fact that the purported class qualified for certification under Rule 23(b)(3).  *Olden,* 383 F.3d at 510-11 ("we do not believe that the defendant's argument [that individualized money damages overwhelm the plaintiffs' request for injunctive relief] makes much sense given that the district court has granted certification under both 23(b)(2) and 23(b)(3)").  In fact, *Olden* explicitly distinguished cases in which courts "certified the class *only* under 23(b)(2), not also under 23(b)(3)," such as *Coleman*.  *Id.* at 511.  Here, by contrast and as discussed above,

15

Plaintiffs cannot as easily claim that "the Rule 23(a) prerequisites have been met," *id.* (citing 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1775 (2d ed. 1986)), nor can they claim that their case is as readily distinguishable from *Coleman* as was the *Olden* plaintiffs' case. *See Coleman*, 296 F.3d at 448 (citing *Eubanks v. Billington*, 110 F.3d 87, 95 (D.C. Cir. 1997), for the proposition that "the underlying premise of (b)(2) certification – that the class members suffer from a common injury that can be addressed by classwide relief – begins to break down when the class seeks to recover...forms of monetary damages to be allocated based on individual injuries."). Additionally, the Sixth Circuit's review of the *Olden* district court's (b)(2) certification decision was conducted using an abuse-of-discretion standard, *Olden*, 383 F.3d at 508. *Olden* does not dictate a particular result. It is more properly viewed as demonstrating the latitude district courts are given in making their certification decisions.

In sum, Plaintiffs appear to seek the sort of monetary damages that are more than "incidental," making the concerns about (b)(2) certification noted in *Allison*, *Coleman*, and *Reeb* more compelling. Plaintiffs' complaint is similar to that considered in *In re School Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986), where the Third Circuit affirmed a district court's decision to deny 23(b)(2) certification of a nationwide class alleging, among other things, negligence, strict liability, and intentional tort based on exposure to hazardous materials. As here, the *In re School Asbestos Litig.* plaintiffs sought "mandatory injunctive relief" as well as money damages. The Third Circuit agreed with the lower court's conclusion that "despite the plaintiffs' ingenuity the claims in this suit were essentially for damages." This Court does not adopt the Third Circuit's seemingly overbroad view that "an action for money damages may not be maintained as a Rule 23(b)(2) class action," *id.*, since "incidental" monetary damages may be appropriate in a (b)(2)

16

class action.  But this Court takes a similar view of Plaintiffs' motion as the *In re School Asbestos Litig.* court took of the complaint before it, and is skeptical that the requested injunctive relief predominates over the requested monetary relief.

IV.

Certification under Rule 23(b)(3) is appropriate when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) classes therefore must satisfy a two-part test of commonality and superiority, and should only be certified if doing so would "achieve economies of time, effort, and expense."  *Sterling,* 855 F.2d at 1196; *see also Amchem*, 512 U.S. at 615.  The Sixth Circuit has provided further guidance on what sorts of cases may be best suited to (b)(3) class adjudication:

> In complex, mass, toxic tort accidents, *where no one set of operative facts establishes liability*, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy.  However, where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct *which is identical for each of the plaintiffs*, a class action may be the best suited vehicle to resolve such a controversy.

*Sterling,* 855 F.2d at 1197 (emphasis added); *see also* Rule 23(b)(3) advisory committee's note. In contrast to Rule 23(a)'s commonality requirement, discussed above, Rule 23(b)(3)'s "predominance criterion is far more demanding."  *Amchem*, 521 U.S. at 624 (holding that certification of a (b)(3) class on the basis of an "overarching dispute about the health

17

consequences of asbestos" alone was inappropriate, given the "greater number of questions peculiar to" the individual class members).

Plaintiffs correctly note that a need for individualized damage determinations is not necessarily fatal to (b)(3) certification. *See, e.g., Olden*, 383 F.3d at 509; *Sterling*, 855 F.2d at 1197. Indeed, courts often bifurcate class action proceedings, adjudicating liability on a classwide basis, and then "if liability is found, the issue of damages can be decided by a special master or by another method." *Olden*, 383 F.3d at 509; *see also In re School Asbestos Litig.*, 789 F.2d at 1010.

Here, Plaintiffs argue that the common factual and legal questions predominate and that any individual questions relate solely to damages. The problem here is that unlike the plaintiffs in, for example, *Cook*, *Olden*, *O'Connor*, and *Sterling,* Plaintiffs here have failed to provide evidence that *liability* can be determined on a classwide basis, i.e. evidence that liability is a common factual and legal question. Plaintiffs have demonstrated that Defendant's operations result in extensive emissions, but what remains missing is any evidence that the *cause* of the entire class's damages could be determined on a classwide basis.[6] In *Olden*, by contrast, the Sixth Circuit proceeded under the belief that the toxins emitted by the defendant were distinguishable from those emitted by "other industrial sources" nearby. *Olden*, 383 F.3d at 508.[7] That is, the *Olden* defendant's plant was assumed to be the sole source of any damage

---

[6]On this point Plaintiffs again lean on the report of Dr. Wabeke, which as the Court has noted is insufficiently convincing on the issue of whether Defendant's liability can be established on a classwide basis.

[7]Notably, the Sixth Circuit alluded to concerns about individualized causation determinations in *Olden*, going so far as to discuss *Reilly*, in which such concerns precluded the district court from certifying a (b)(3) class. *Olden*, 383 F.3d at 510. Yet without much explanation beyond apparent reassurance taken from the fact that causation problems would be "immediately apparent to the district court" given that other possible causes of the contamination were also before the same judge in separate actions, *id.* at 508 n.4, the Sixth Circuit asserted that *Olden* did not present "the same level of individual determination" as in *Reilly*. *Id.* at 510.

suffered by the plaintiffs, so a causation determination as to one class member could be extrapolated to all, and the defendant's tort liability could be adjudicated on a classwide basis.

Here Plaintiffs proceed primarily under theories of trespass and nuisance.  To prove their trespass claim, Plaintiffs must show "an intrusion (or encroachment) which is an unreasonable interference with a property owner's possessory *use* of his/her property."  *Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 57 (Ky. 2007).  A nuisance "arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage." *Smith v. Carbide & Chems. Corp.,* 2007 WL 3225419 at *6 (6th Cir. Nov. 2, 2007) (citing *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky 1950) (quoting 39 Am Jur. *Nuisances* § 2)).  The Court has searched Defendant's extensive submissions in vain for any report, test, or other piece of evidence that would allow it to conclude that liability on either claim might be adjudicated on a classwide basis.  Yet as in *Ramik,*[8] it is impossible for the Court to conclude that the critical element of causation as to either claim will be anything other than highly individualized.  The Court finds no evidence linking Plaintiffs' alleged harm to Defendant, much less doing so unquestionably (as was the case in *Olden* due to the presence of a contaminant uniquely attributable to the defendant). Thus, the Court cannot be assured that Defendant's liability to the class will be a common question or that a class action would be the superior method of adjudicating Plaintiffs' claims.  As elsewhere throughout the Rule 23 analysis, the Court is again

---

[8]In contrast to its view of the *Ramik* court's (b)(2) analysis, this Court finds *Ramik* to be directly on point as to its (b)(3) analysis of the odor-related claims before it, and readily capable of extrapolation to the "fallout" claims currently before the Court.

19

confronted with the infirmities of the class definition, and thus the Court finds that Plaintiffs do not satisfy Rule 23(b)(3).

V.

One could suggest in good faith, as indeed Plaintiffs have, that this Court has the discretion to certify a class even where no evidence defines the precise nature and scope of the alleged nuisance or trespass committed by Defendant.  Indeed, some courts have done so based upon what this Court perceives as a less-than-rigorous analysis.  Whether such a certification might be within the broad parameters of the Court's discretion, however, is not the question precisely presented.  Rather, this Court must consider whether the requirements of Rule 23 have been met such that the class action mechanism is appropriate for adjudication here and now. Plaintiffs' counsel bears the burden of producing something more than Plaintiffs' wholly subjective belief that their property is affected by Defendant's emissions and that all those in a two-mile radius must be similarly affected.

To a significant extent the Court shares Plaintiffs' belief that these allegations may well be best adjudicated on a classwide basis at some point, for precisely the reasons identified in cases such as *Sterling*.  But upon repeated reexamination of the record, all the Court finds before it is a substantial amount of relatively uncontroverted evidence indicating that (A) Defendant, as part of its distilling operations, emits various pollutants into the atmosphere, and (B) Plaintiffs, who live relatively close to Defendant's plant (as well as facilities operated by other companies) have some sort of substances and noxious odors on their property.  Rule 23 exists precisely to ensure that class certification is based upon something more than a generalized assumption. Plaintiffs have quite simply failed to carry their burden of satisfying the requirements of Rule 23,

20

and as such the Court cannot properly conclude that certification of the proposed class is

appropriate.

The Court will issue an order consistent with this Memorandum Opinion.

cc:     Counsel of Record