UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*ELECTRONICALLY FILED*

JAMES BROCKMAN, ET AL.                                               PLAINTIFFS

v.                                                CIVIL ACTION NO. 3:06-cv-332(H)

BARTON BRANDS, LTD.                                                   DEFENDANT

**MEMORANDUM OF DEFENDANT BARTON BRANDS, LTD.
IN SUPPORT OF ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT REPORT OF STEPHEN PAUL AND DANIEL C. MASER**

**INTRODUCTION**

  Defendant Barton Brands, Ltd., now known as Constellation Spirits, Inc., d/b/a Barton Brands ("Barton Brands"), by counsel, respectfully submits this Memorandum in Support of its Motion to Exclude Plaintiffs' Expert Report of Stephen Paul and Daniel C. Maser of Enviroair Consultants, Inc. ("Enviroair"), dated December 31, 2008, a copy of which is attached as Exhibit A. In particular, Barton Brands asks that the Court prohibit Plaintiffs from introducing into evidence, or otherwise testifying or relying on at trial, the Enviroair expert report entitled Enviroair Project No. 080917-SDPI Fungal Surface Sampling (the "Enviroair Report") because it attempts to inject new claims and purported damages into this lawsuit at this late date. Because of the untimeliness of these new claims, Barton Brands will suffer substantial prejudice if Plaintiffs are permitted to substantially alter their case after the close of fact discovery. The Enviroair Report and any related testimony should therefore be excluded for all purposes.

  After two and one half years of litigation, two amended Complaints, an unsuccessful attempt to obtain class certification, and extensive written discovery and thirty-five (35) depositions, Plaintiffs have produced an expert report which attempts to introduce new claims and new damages related to alleged mold growing on their property. As discussed more fully

below, at no time during this litigation, through a complaint, pleading, deposition or interrogatory answer have Plaintiffs ever remotely suggested that any alleged damages to their property were caused by the "growth" of mold or yeast on their property which resulted from the actions of Barton Brands or, for that matter, any other party. These new allegations are contrary to and entirely different from the damages previously claimed from fall out from Barton Brands' coal fired boiler. Therefore, the Enviroair Report should be excluded.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2006, Plaintiffs filed this putative class action alleging damage to their property because of the alleged smoke stack emission of "fallout particulate contaminants" and "odors" from Barton Brands' distillery. See Second Amended Complaint ¶ 85 (Dkt. No. 93). According to the Second Amended Complaint, Plaintiffs' "person and property including Plaintiffs' neighborhood, residences, and yards, were physically invaded by fallout particulate, air contaminants and odors" originating from Barton Brands' distillery. Id., ¶¶ 91-92. In every subsequent pleading, discovery response and brief filed by Plaintiffs over the last 2 ½ years (and at every hearing), Plaintiffs have consistently contended that the emissions and fallout were caused by Barton Brands' coal fired boiler which "blanketed" everything with a black substance within a two mile radius of the Barton Brands' distillery, including homes, cars and other personal property. See Plaintiffs' Brief in Support of Motion for Class Certification (Dkt. No. 53) at 9 (in discussing the black substance, Plaintiffs noted that "[c]ertainly carbonized material is a common particulate emitted by coal-fired electrical generation facilities. Coal dust is also released by the very inefficient coal-combustion process and also from free standing, environmentally unprotected, coal piles"). See also Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Class Certification of Class Action (Dkt. No. 74), p. 2 (referring to Barton Brands' as a "frequent polluter"). See Transcript of Hearing on Motion for Class Certification

dated November 5, 2007, at pp. 51, 8, (Dkt. No. 82) ("some people [saw] dust fall on their property," it "came from the stacks," "they're black fallout and dust . . . that they have seen coming from Bartons," "Bartons' burns at least 10,000 tons of coal per year," Barton discharges "133 tons of particulate matter every year.").

Plaintiffs amended their Complaint in June 2007 and again in 2008, after the Court denied their Motion for Class Certification, and at no point did Plaintiffs **ever** assert any claims or damages arising from anything other than fallout on their property from Barton Brands' coal fired boiler.  See First Amended Complaint (Dkt. No. 36) and Second Amended Complaint (Dkt. No. 93).  The allegations of the Second Amended Complaint were identical to those of the First Amended Complaint, only adding additional Plaintiffs, but not changing the allegations.  See Dkt. No. 98.

Moreover, of the 35 Plaintiffs who remain in this lawsuit,[1] none have ever sought to amend their Complaint in this case to allege damages to their property from mold.  Pursuant to the April 23, 2008 Court's Scheduling on Agreed Litigation Plan and Discovery Schedule, no provision was made for further amendments of the Second Amended Complaint.  See Dkt. No. 101.

Barton Brands first learned of Plaintiffs' efforts to include mold as a new theory of liability and damage in early January 2009 when counsel for Barton Brands received a copy of the Enviroair Report from Plaintiffs' counsel without explanation via e-mail less than three weeks before the close of fact discovery.  By this time, Barton Brands had already completed all written discovery, consulted with potential experts consistent with Plaintiffs' original claims that

---

[1]   After class certification was denied in November, 2007, 115 Plaintiffs joined the lawsuit as parties.  Over the course of one year, 80 of those 115 Plaintiffs have voluntarily dismissed their claims against Barton Brands, leaving only 35 remaining individual Plaintiffs.

any alleged fallout and emissions originated solely from Barton Brands' coal-fired boiler, and had taken the bulk of Plaintiffs' depositions. A cursory review of the Enviroair Report shows that it attempts to set forth an entirely new theory which purports to demonstrate that "ethanol vapors that transpire[d] from stored wooden barrels of distilled spirits" have caused black mold to grow on trees, roofs and walls around the distillery. According to Enviroair, the mold is "present due to the ethanol originating from" the Barton Brands' storage of wooden barrels of distilled spirits in its warehouses, and not the coal stack. See Exhibit A, at p. 5.

Because of Plaintiffs' efforts to add new claims this late in the litigation without any showing of good cause for the two and one-half year delay between filing their original Complaint and the Enviroair Report, Barton Brands was forced to file this Motion to Exclude.

ARGUMENT

I.  PLAINTIFFS CANNOT INTRODUCE A NEW THEORY OF LIABILITY AND DAMAGES IN AN EXPERT REPORT

The Federal Rules of Civil Procedure require that a complaint shall contain a short and plain statement of the claim showing the pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2). The purpose is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957), rev'd on other grounds, Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007). "[A]n expert report is not a proper substitute for a pleading." In re Student Finance Corporation, 2007 WL 2936195 (D. Del., Oct. 5 2007).

Here, Plaintiffs seek to introduce an entirely new theory of liability and claim for damages allegedly caused by black mold through the Enviroair Report after years of litigation, and well after any cut-off for amending their Complaint. Equally troubling is the fact that Plaintiffs were permitted by the Court to liberally amend their Complaint on two prior occasions.

Yet, in neither of those Amended Complaints did Plaintiffs ever allege a claim against Barton Brands for mold allegedly growing on their properties, as opposed to fallout particulates allegedly emitted from Barton Brands' coal stack. Moreover, the "mold claim" was only introduced after written discovery had been completed, many of the Plaintiffs' depositions had been taken and just three weeks before fact discovery was set to close.[2]

While Rule 15(a) of the Federal Rules of Civil Procedure state that "leave [to amend] shall be freely given when justice so requires," a court nevertheless should deny leave to amend where, as here, the requested amendment is the result of undue delay, bad faith, and dilatory motive on the part of the movant and would cause undue prejudice to the opposing party. Foman v. Davis, 83 S. Ct. 227 (1962). Courts have affirmed denials of leave to amend in cases involving much less delay than here. See, e.g., Parry v. Mohawk Motors of Michigan, 236 F.3d 299, 306 (6th Cir. 2000); U.S. v. Midwest Suspension & Brake, 49 F.3d 1197, 1202 (6th Cir. 1995) (upholding denial of leave to amend where defendant "failed to proceed with due diligence" when defendant sought leave to amend two years after original complaint); Duggins v. Steak 'N Shake, Inc. 195 F.3d 828, 834 (6th Cir. 1999) (upholding denial of leave to amend where movant "delayed pursuing ... claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed" without justification for delay); Shane v. Bunzl Distribution, USA, Inc., 275 Fed. Appx. 535, 536-538 (6th Cir. 2007) (upholding denial of leave to amend to assert new factual allegations based on previously known facts after deadline in scheduling order had passed, on basis that plaintiff had not shown good

---

[2] All Plaintiff depositions had been Noticed prior to the deadline in the Court's April 23, 2008 Scheduling Order. However, some Plaintiffs failed to appear for their noticed time necessitating the depositions to be rescheduled for 2009. Despite efforts to reschedule these depositions within the Court's deadline, in order to accommodate Plaintiffs' schedule, Barton Brands obtained a brief extension, through an Agreed Order, of the fact discovery deadline for this sole purpose.

cause; amendment would have changed underlying premise of case, necessitating reopening of discovery and prejudicing defendant). Putting a party defendant "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." Troxel Manufacturing Co. v. Schwinn Bicycle Co., 489 F.2d 968, 971 (6th Cir. 1973), cert. denied, 94 S.Ct. 1942 (1974). Priddy v. Edelman, 883 F. 2d 446, 447 (6th Cir. 1989).

These same principles should be applied here. Plaintiffs should not be allowed to introduce entirely different legal theories and factual allegations just three weeks before the discovery cut off date, after the bulk of discovery has been completed and on the eve of the deadline for filing dispositive motions. The substantial prejudice to Barton Brands is obvious given the additional time and expense of continued litigation on an entirely new theory. In short, the Enviroair Report cannot be used to inject a new claim for mold liability and damages at this late stage in the proceedings and well after the deadline to amend the Complaint has passed. Accordingly, the Enviroair Report and any related testimony should be excluded for all purposes.

II.   THE ENVIROAIR REPORT IS NOT PREDICATED ON FACTS SUPPORTED BY THE RECORD AND SHOULD BE EXCLUDED

Moreover, expert opinions may not be predicated on facts not supported by the record, nor may Plaintiffs or their experts rely on information and documents not produced in discovery. See Fed. R. Civ. P. 37(c)(1). A party that without substantial justification fails to disclose information required by Fed. R. Civ. P. 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Fed .R. Civ. P. 26(e)(2), is not permitted to use such evidence at trial.

Where, as here, an expert report belatedly attempts to go beyond the scope of the record and inject new facts not previously disclosed in discovery or otherwise, courts may exclude the offending report. See, e.g., Tantivy Communications, Inc. v. Lucent Technologies, Inc., 2005

WL 2860976 (E.D. Tex. Nov. 1, 2005) (recognizing that a party may not produce documents and information for the first time in expert reports after the close of discovery);[3] see also Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., 1996 WL 680243 *8 (N.D. Ill. Nov. 21, 1996) (precluding late-filed report asserting a new defense because "had plaintiff been aware of defendants' intention to raise [new] defense, it would have altered the way it conducted discovery); Bowe v. Consol. Rail. Corp., 2000 WL 143584, *4 (6th Cir. Sept. 19, 2000) (affirming exclusion of expert report as untimely, as defendant had been unharmed by nondisclosure as to basis for claim until after discovery deadline, unjustified by alleged delay of opposing party in providing certain information).

Moreover, Fed. R. Civ. P. 26(e)(2) provides that a litigant is under a duty to "amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during discovery in writing." Fed. R. Civ. P. Rule 37(c)(1) requires compliance with Rule 26(a), "mandat[ing] that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." Mullins v. U.S. Bank, N.A., 2007 WL 2071906 *5 (S.D.Ohio, July 17, 2007, quoting Roberts v. Galen of Virginia, Inc., 325 F.3d 776, 782 (6th Cir. 2003) (citing Salgado v. General Motors Corp., 150 F.3d 735 at 742 (7th Cir. 1998) (noting that "the sanction of exclusion is automatic and mandatory" unless the sanction party can show that is violation of Rule 26(a) was either justified or harmless)). "A party that

---

[3] In Tantivy, the Court held that the defendant violated Rule 26 when it failed to produce in discovery documents heavily relied upon and produced for the first time after the close of discovery in a rebuttal expert report. According to the Court, "continuances for discovery misconduct would allow parties to disregard Rule 26 and [a] Court's Discovery Orders with impunity. Further, granting a continuance would reward [a dilatory party] for making a tactical decision to ambush [the other party].... Parties have an affirmative obligation … to search for and produce relevant documents…. The parties are under an obligation to produce all relevant documents."

7

without substantial justification fails to … amend a prior response to discovery as required by Rule 26 … [is not] permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.  The purpose of these rules is to avoid surprise and trial by ambush." Transclean Corp. v. Bridgeweed Servs., Inc., 77 F. Supp 1045, 1061 (D. Minn. 1999), aff'd in relevant part, 290 F.3d 1364 (Fed. Cir. 2002).  The burden to prove substantial justification or harmlessness rests with the dilatory party.

Here, Plaintiffs did not amend or update any discovery productions or responses with respect to any allegations of a mold theory of liability and damages, although Plaintiffs were expressly asked to provide such information and documents.  Significantly, Barton Brands first learned of Plaintiffs' efforts to include mold as a new theory of liability and damages in early January 2009 when counsel for Barton Brands received a copy of the Enviroair Report from Plaintiffs' counsel, without explanation, via e-mail just weeks before the close of fact discovery.  By this time, Barton Brands had completed all written discovery, consulted with potential experts consistent with Plaintiffs' original claims of alleged fallout and emissions originating from Barton Brands' coal-fired boiler and taken the bulk of Plaintiffs' depositions.

Moreover, Plaintiffs were under an affirmative obligation to provide such information in their written discovery responses if they intended to rely upon it to support their claims, but they failed to do so.  See Rule 26(a) (placing affirmative duty on each party to disclose all documents and information that may be used to support the party's claims or defenses, unless used solely for impeachment).

In short, had Barton Brands known that Plaintiffs would pursue this late filed theory of liability and damages, Barton Brands would have conducted fact discovery and every other aspect of this litigation differently.  In the case of an expert report that seeks to introduce new

8

matter not contemplated by the pleadings, complaints, discovery or interrogatories, this type of harm is sufficient to preclude such a report.  See, e.g. Heidelberg Harris, Inc, 1996 WL 680243 *8.  Accordingly, the Enviroair Report, should be excluded in its entirety.

## CONCLUSION

Based on the foregoing, Barton Brands respectfully requests that the Court enter an Order excluding the Enviroair Report served by Plaintiffs on January 3, 2009:

Respectfully submitted,

/s/ *Janet P. Jakubowicz*
Janet P. Jakubowicz
Steven A. Brehm
GREENEBAUM, DOLL & MCDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, KY 40202-3103
(502) 589-4200

COUNSEL FOR DEFENDANT, BARTON BRANDS, LTD n/k/a CONSTELLATION SPIRITS, INC., d/b/a BARTON BRANDS

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of May, 2009, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Matthew L. White
Mark K. Gray
Franklin Gray & White
The Speed Mansion
505 West Ormsby Avenue
Louisville, Kentucky 40203
(502) 637-6000

COUNSEL FOR PLAINTIFFS

Peter W. Macuga, II
Steven D. Liddle
Macuga & Liddle, P.C.
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
(313) 392-0015

COUNSEL FOR PLAINTIFFS

/s/ *Janet P. Jakubowicz*
COUNSEL FOR DEFENDANT

3331100_3.doc