UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


JAMES BROCKMAN, *et al.*,                                                    PLAINTIFFS


v.                                                  CIVIL ACTION NO. 3:06-CV-332-H


BARTON BRANDS, LTD.                                                    DEFENDANT


BARTON BRANDS, LTD.'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS ASSERTED BY PLAINTIFFS




Respectfully submitted,


*/s/ Janet P. Jakubowicz*
Janet P. Jakubowicz
Steven A. Brehm
Greenebaum Doll & McDonald PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky  40202-3197
(502) 589-4200

COUNSEL FOR DEFENDANT
BARTON BRANDS, LTD. n/k/a
CONSTELLATION SPIRITS INC. d/b/a
BARTON BRANDS

## TABLE OF POINTS AND AUTHORITIES

INTRODUCTION…………………………………………………………...…….1

FACTUAL BACKGROUND………………………………………………………2

I.      Relevant Procedural History…………………………………………………2

II.     Barton Brands' Distillery In Bardstown, Kentucky………………...………6

III.    Plaintiffs' Expert Evidence…………………………………………………8

      A.      Roger Wabeke's August 13, 2007 Report………………………...………9

      B.      Stephen Paul's October 13, 2008, Report on Particulate Matter……...…10

      C.      Paul's December 2, 2008 Odor Report and January 6, 2009 Odor
      Reports……………………………………………………………………12

STANDARD FOR SUMMARY JUDGMENT……………………………….....14

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.574 (1986)…………15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)…………………………………15

ARGUMENT………………………………………………………………….....15

I.      Plaintiffs' Case Cannot Proceed Without Proof That Barton Brands Caused The
      Harm of Which They Complain………………………………………………....15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)………………………………....15

Bailey v. North American Refractories Co., 95 S.W.3d 868 (Ky. App. 2001)…………16

Huffman v. S.S. Mary & Elizabeth Hospital, 475 S.W.2d 631 (Ky. 1972)…………..…16

Leaf River Forest Products, Inc. v. Simmons, 697 So.2d 1083 (Miss. 1996)………..16-17

Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648 (Miss. 1995)……………17

Anglado v. Leaf River Forest Products, Inc., 716 So.2d 543 (Miss. 1998)……………..17

Herrington v. Leaf River Forest Products, Inc., 733 So.2d 774 (Miss. 1999)…………..18

II.    Plaintiffs' Claims Must Also Be Dismissed Because They Cannot Provide Any
       Reliable Evidence of Damages……………………………………….…….21

KRS 411.560………………………………………………………………….…….21

Smith v. Carbide and Chemicals Corp., 507 F.3d 372 (6th Cir. 2007)……………..…….21

Chapman v. Beaver Dam Coal Co., 327 S.W.2d 397 (Ky. 1959)………………………21

Adams Construction Co., Inc. v. Bentley, 335 S.W.2d 912 (Ky. 1960)………….…..21-22

Kentucky Mountain Coal Co. v. Hacker, 412 S.W.2d 581 (Ky. 1967)………………....22

Wilhite v. Rockwell International Corp., 83 S.W.3d 516 (Ky. 2002)…………………..22

Consolidation Coal Co. v. Mann, 181 S.W.2d 394 (Ky. 1944)…………………….....23

CONCLUSION………………………………………………………………….…….24

## INTRODUCTION

This is a nuisance, trespass and negligence case brought by 35 residents of Bardstown, Kentucky based on purported odors and complaints about "fall out" allegedly emitted from the smoke stack of Defendant Barton Brands, Ltd. n/k/a Constellation Spirits, Inc. d/b/a Barton Brands ("Barton Brands"). Barton Brands respectfully submits this Memorandum in Support of its Motion for Summary Judgment on all claims asserted by Plaintiffs. In November 2007, this Court denied Plaintiffs' Motion for Class Certification (Dkt. 83 and 84). After that denial, through an amended complaint, Plaintiffs then added 115 individuals as party Plaintiffs in this lawsuit (Dkt. 98), 84 of which subsequently dismissed their claims by a series of Agreed Orders. See Dkt. 108, 114, 122 and 125. Despite the denial of class certification, rather than submitting expert opinions and evidence specific to the individualized nature of each Plaintiff's property and claims, Plaintiffs have only offered expert testimony which purportedly applies to and covers all of their claims jointly. This tactic has left wide gaps in the proof required to prove each of their individualized claims and makes summary judgment in favor of Barton Brands on all claims asserted by Plaintiffs appropriate.

All deadlines for Plaintiffs to introduce further evidence have passed. Fact discovery closed on March 18, 2009 (extended from February 1, 2009 to accommodate Plaintiffs' schedules) (Dkt. 119). Similarly, Plaintiffs' deadlines to disclose their experts passed on March 1, 2009 (Dkt. 102).[1]

Against this undisputed and irrefutable record, Barton Brands submits that this lawsuit is suited for summary judgment on liability and damages for at least five (5)

significant reasons.  First, Plaintiffs have failed to provide a shred of evidence that shows a causal link between any particulate "fall out" or odors for which they complain and any action, conduct or omission of Barton Brands.  Second, with the exception of one Plaintiff, **none** of the "testing" for particulate "fallout" performed by Plaintiffs' experts was conducted on the property of the 35 remaining Plaintiffs.[2]  Third, **none** of the "testing" for odor performed by Plaintiffs' experts was conducted on the property of the 35 remaining Plaintiffs.  Fourth, Plaintiffs have not and cannot establish any purported damages to their property regarding any diminution in the fair market value of their properties (i.e. a before and after value comparison).  Finally, Plaintiffs have not presented any expert testimony regarding damages.[3]

Because Plaintiffs cannot establish causation or damages, both critical elements to their legal claims, Barton Brands is entitled to summary judgment on the Second Amended Complaint as a matter of law.

## FACTUAL BACKGROUND

I.    **RELEVANT PROCEDURAL HISTORY**

Plaintiffs filed this lawsuit as a putative class action on July 11, 2006, almost three years ago.  Early in the case, the parties met and conferred and the Court issued a

---

[1] Barton Brands and Plaintiffs recently agreed to postpone deadlines for taking the depositions of Plaintiffs' experts and the deadlines for disclosures by Barton Brands of its experts until this Court rules on this Motion (Dkt. 135).

[2] It appears that samples may have been taken from the property of Plaintiff Beatrice Rogers.  However, Ms. Rogers did not submit any proof of damages and, therefore, the existence of this testing does not preclude summary judgment with respect to Ms. Rogers.

[3] In addition to the reports on particulate and odor, Plaintiffs submitted an expert report regarding a purported "mold" growing on Plaintiffs' properties.  Barton Brands filed a motion to strike this report because of the lateness of the filing of this new theory of Plaintiffs.  See Dkt. 127.  However, even if the report was allowed, summary judgment is still appropriate for Barton Brands because the opinions in the "mold" report suffer from the same fatal flaws of the other reports, namely that since none of the "mold" samples were taken from the property of any Plaintiff, no Plaintiff can establish the required causal connection between Barton Brands' operations and Plaintiffs' alleged injuries to their property.

Scheduling Order which bifurcated class certification issues from merits issues. The parties and the Court agreed that "in the interest of efficient case management and orderly procedure, the issue of class certification should be fully determined by the Court" prior to any merits based discovery in the case. See Agreed Scheduling Order (Dkt. 21). The Agreed Scheduling Order set forth a detailed timeline with deadlines regarding discovery and briefing on the class certification issue. The class certification hearing date was originally scheduled to commence on July 27, 2007, but was later rescheduled for November 5, 2007. See Agreed Order Amending October 12, 2006 Scheduling Order (Dkt. 35).

Over the course of the next twelve months, Barton Brands served written class discovery on Plaintiffs, took the depositions of each of the named Class Representatives and filed two separate motions to compel Plaintiffs to answer the discovery requests. In addition, at an in-person hearing in March 2007, the Court specifically told counsel for Plaintiffs that they would need to provide the Court with some sort of scientific evidence to show a causal link between the alleged fallout and odors about which Plaintiffs complain and the substances emitted by Barton Brands. Conclusory assertions by Plaintiffs that they had "something on their property" would not suffice, according to the Court.

In the summer of 2007, Plaintiffs filed a First Amended Class Action Complaint dropping certain named Plaintiffs and adding other named Plaintiffs. In addition, the Plaintiffs entered into an Agreed Order which dismissed with prejudice all of their claims for personal injury (physical, mental and emotional) set forth in their First Amended Complaint. See Agreed Order Dismissing Personal Injury Claims (Dkt. 50).

Upon the completion of class discovery, the parties filed extensive briefs on the issue of class certification (Dkt. Nos. 53, 64, 74 and 76), and exchanged witness lists and the exhibits they anticipated using at the class certification hearing, all as required by the Court's Amended Scheduling Orders.  On November 5, 2007, the Court held a three hour hearing at which time counsel for both sides were provided the full opportunity to present evidence and oral argument on the issue of class certification.  At the hearing, counsel for Plaintiffs affirmatively and in open Court admitted that Plaintiffs were not making any claims against Barton Brands for any "sewer" type odors, but rather, the odors were described as a "whiskey" or "sour mash" smell.  See Transcript of November 5, 2007 Class Certification Hearing (Dkt. 102), p. 58.  The matter was then taken under submission by the Court.

On November 21, 2007, the Court issued a 21 page Memorandum Opinion denying Plaintiff's Motion for Class Certification ("Memorandum Opinion").  See Dkt. No. 83.  The Court's well-reasoned Memorandum Opinion went through a rigorous analysis of both Rule 23 and its requirements and the relevant controlling case law.  In holding that class certification was not appropriate in this case, the Court noted that after more than "six months of class discovery," the record was devoid of any "evidentiary relationship between the geographic boundaries of the proposed class and the alleged exposure zone of pollution."  Id., at 7-8.[4]  The Court went on to add that "what is most startling about Plaintiffs' motion for class certification is the near-total lack of evidence linking the fallout and/or odors about which Plaintiffs complain to the substances emitted by Defendant."  Id., at 8.  The Court noted that these omissions were "particularly

---

[4] In addition to the lack of "causal" evidence, the Court noted that Plaintiffs' evidence suffered from other deficiencies, including the failure to exclude other sources.  See Memorandum Opinion, p. 8, n. 2.

glaring" given how readily available this information was for Plaintiffs. Id. at 9. The Court told counsel for Plaintiffs that they needed to take tests of the substance on Plaintiffs' properties in order to prove their claims (something Plaintiffs did not do during the class certification phase and had still failed to do by the deadline for fact discovery). See Transcript of November 5, 2007 Class Certification Hearing (Dkt. 102), p. 56. Because Plaintiffs could not credibly link their alleged injuries to the operations of Barton Brands, the Court concluded that Plaintiffs could not carry their burden of satisfying the elements of Rule 23, and thus denied their motion for class certification. See Memorandum Opinion, at 20-21.

On April 7, 2008, the Court granted Plaintiffs' motion for leave to add 115 Plaintiffs to the First Amended Complaint, for a total of 119 Plaintiffs. At the time, Plaintiffs' counsel made clear to both the Court and Barton Brand's counsel that the Second Amended Complaint was not intended to resurrect the Plaintiff's personal injury claims (which had been previously dismissed by Agreed Order "with prejudice" (Dkt. 50), nor were Plaintiffs seeking any relief from Barton Brands for any alleged "sewer" odors.

On April 23, 2008, the Court issued a Scheduling on Agreed Litigation Plan and Discovery Schedule ("Schedule") setting forth numerous deadlines for the upcoming trial on the individual claims of Plaintiffs to be held in February 2010. See Dkt. 101 and 102. Following the Schedule, as set forth by this Court, Barton Brands engaged in both written and deposition discovery.[5] As noted previously, the parties entered into numerous Agreed Orders to dismiss Plaintiffs who either did not wish to remain as Plaintiffs in the

---

[5] Significantly, Plaintiffs did not take any depositions of Barton Brands or its employees, or anyone else for that matter.

lawsuit, refused to respond to Barton Brands' relevant discovery requests, or refused to appear for their depositions.  From September 2008 through March 20, 2009, 84 individual Plaintiffs were dismissed.  See Agreed Orders (Dkt. 108, 114, 122 and 125).

Presently, of the original 119 Plaintiffs as of May 2008, only 35 individual Plaintiffs remain in this lawsuit.

## II.    BARTON BRANDS' DISTILLERY IN BARDSTOWN, KENTUCKY

Since the 1940s, Barton Brands has operated a distillery in Bardstown, Kentucky. In fact, the facility has operated continuously as a distillery since 1879, except for a brief period during prohibition.  See Affidavit of Johnnie B. Colwell of Barton Brands ("Colwell Affid.," ¶ 1), attached as Exhibit A.  Barton Brands manufactures such brands as Very Old Barton Bourbon Whiskey, 1792 Ridgemont Reserve Bourbon Whiskey, Ten High Bourbon, Kentucky Gentleman Bourbon A-Blend and Paul Masson Brandy.  Id. at ¶ 3.

At the time it was built, the distillery was located in a rural area, but over time, the City of Bardstown has grown up around the distillery.  Today, the distillery is located near numerous other manufacturing and industrial plants including Bardstown Mill (a feed mill), Heaven Hill Distillery and the City of Bardstown's wastewater treatment plant and lift stations.  Id. at ¶ 4.  See also Map of Bardstown, Kentucky, attached as Exhibit B. It is undisputed that at all times relevant, Barton Brands has met or exceeded all applicable laws, regulations and permits relating to air and odor emissions as alleged in the Second Amended Complaint in the conduct of its operations, and has never been cited by any regulatory authority for any of the issues raised in the Second Amended Complaint.  Id. at ¶ 5.

Despite the fact that Barton Brands operated in Bardstown, Kentucky long before any of these Plaintiffs resided there, and Barton Brands has a proven track record of meeting or exceeding all environmental regulations or requirements, Plaintiffs allege that the "processes [Barton Brands] utilizes in its normal business operations create fallout, air contaminants and odors." See First Amended Class Action Complaint (Dkt. 36), ¶ 18. Plaintiffs' point to Barton Brands' coal-fired boiler as the primary source of emissions at the distillery.[6]

Although Plaintiffs falsely portray Barton Brands as a blackened environmental polluter, the undisputed facts demonstrate just the opposite. Barton Brands' coal-fired boiler is not only highly efficient, its emissions rates are well below what is permitted by federal and state law. See Colwell Affid., ¶ 6. In various inspections by the Kentucky Department of Air Quality ("KDAQ") over the last five years, state inspectors have repeatedly confirmed that Barton has always operated in full compliance with all applicable regulations. See KDAQ Compliance Certificates, attached collectively as Exhibit C to Barton Brands' Response to Plaintiffs' Motion for Class Certification (Barton Brands' Class Certification Response") (Dkt. 64).

Moreover, for more than 20 years, Barton Brands has used multiple state of the art air emission control features at its Bardstown, Kentucky distillery which are designed to be protective of public health and the environment. See Exh. A, Colwell Affid., ¶ 7. Barton Brands' coal-fired boiler is equipped with a baghouse, and a fly ash reinjection

---

[6] To support its manufacturing, Barton Brands operates three boilers, one of which is a coal-fired boiler and the other two use natural gas or No. 2 oil. See Exh. A, Colwell Affid., ¶ 5. At the time of Mr. Colwell's affidavit testimony, Barton Brands burned approximately 10,300 tons of coal per year. Id., at ¶ 6. Barton Brands' coal-fired boiler has been in use at the distillery since approximately 1961. Id., at ¶ 5.

and multiclone system which has a control efficiency of approximately 94%.  See Exh.

A, Colwell Affid., ¶ 7.

Similarly, Barton Brands uses additional emission control equipment and

processes in connection with the cereal grain used in the distilling process.  Id., at ¶ 8.

Barton Brands has used a "hammer mill" for over 20 years which is designed to draw and

collect dust produced through a bag house.  This system has proved effective in

substantially reducing the dust caused by cereal grain at the distillery.  Id.

III.    **PLAINTIFFS' EXPERT EVIDENCE**

The deadline for Plaintiffs to identify their expert witnesses, produce expert

reports and otherwise comply with the Fed. R. Civ. P. 26(a) disclosures has passed.  In

turn, Plaintiffs have produced four expert reports from two purported experts -- one

report from Roger Wabeke of Chemical Risk Management and three reports from

Stephen Paul of EnviroAir.  Each of these reports goes to the issue of either odor or

particulate fall out.[7]

Significantly, Plaintiffs have not disclosed any expert who would testify with

respect to the issue of property valuation or alleged diminution in the value of Plaintiffs'

properties or any other damages for that matter, nor were any appraisals done on any

property at issue.  Thus, Plaintiffs' evidence of causation and damages is limited to the

four expert reports which they produced pursuant to the Court's Schedule.  However, as

discussed more fully below, none of these expert reports can salvage the fundamental

flaws in Plaintiffs' claims – lack of causation and the inability to establish damages.

---

[7] Plaintiffs provided a fifth report co-authored by Stephen Paul and Daniel Maser of EnviroAir.  Barton Brands has moved to strike this report (Dkt. 127) because it seeks to introduce new case theories after three (3) years of  litigation and just weeks before discovery closed.

A.      Roger Wabeke's August 13, 2007 Report.[8]

In support of their Motion for Class Certification argued in November 2007, Plaintiffs presented an "expert" report of Roger Wabeke dated August 13, 2007, who asserted opinions about the source of the particulate of which Plaintiffs complain.  No other report of Mr. Wabeke has been proffered specifically in support of Plaintiffs' individualized claims.

In its Memorandum Opinion and during the Class Certification Hearing on November 5, 2007, this Court discredited Mr. Wabeke's Report noting that it "falls woefully short of establishing the necessary evidentiary link between Plaintiffs and Defendant" and that it is "wholly insufficient to overcome the evidentiary gap in the showing required of Plaintiffs."  See Memorandum Opinion, Docket No. 83, pp. 8-9, n.3. Similarly, during the hearing on Plaintiffs' motion for class certification, this Court noted that while Mr. Wabeke may be an expert, Mr. Wabeke's August 13, 2007 report did not contain an "expert opinion" because of numerous infirmities.  Specifically, the Court stated:

> A real expert examines the property and says, yes, I did an examination
> and the stuff that came out of the stacks is the same stuff on their property;
> therefore, it's reasonable to believe that the stuff they're complaining
> about actually did.  And then the complaints related to the stuff that I
> found.  That's what real experts say.  (Wabeke) may be a real expert.
> Whatever opinion he gave so far doesn't – I don't consider it really an
> expert opinion, at least not that's relevant in this case.

See Transcript from November 5, 2007 Class Certification Hearing (Dkt. 82), p. 56.

In addition, the Court provided a roadmap to Plaintiffs of the type of evidence they needed, but which the Court could not find anywhere in the record:

---

[8] A true and accurate copy of the Wabeke Report is attached as Exhibit C.

> Nowhere in Plaintiffs' evidence has the Court found, for example, test
> results for any substances Plaintiffs allege have fallen onto their property,
> or any sort of analysis of where the emissions of Defendant's plant spread
> once they leave Defendant's smokestack.

Memorandum Opinion (Dkt. 83), pp. 8-9.

Despite the Court's candid comments, both at the Class Certification Hearing and in its subsequent Memorandum Opinion, regarding Mr. Wabeke's Report, Plaintiffs persist in proffering Mr. Wabeke's report to establish a causal connection between the particulate of which Plaintiffs complain and the conduct of Barton Brands. The troublesome "evidentiary gap" noted by this Court during the Class Certification stage, however, has not been cured by Plaintiffs in trying to prove their individual claims. Thus, for the same reasons this Court discredited the Wabeke Report as insufficient during the Class Certification stage, it should again give no weight to the Wabeke Report today. The Wabeke Report utterly fails to provide any evidentiary link between any substance on any of Plaintiffs' properties and any activity or emission of Barton Brands. The subsequent reports of Plaintiffs' expert, Stephen Paul of EnviroAir, suffer from the same deficiencies.

**B.    Stephen Paul's October 13, 2008 Report On Particulate Matter.[9]**

In September of 2008, Mr. Paul collected "particulate matter from selected outdoor surfaces with a one mile radius" of Barton Brands. See Paul Particulate Report, pp. 1 & 2. According to Mr. Paul, he took 25 samples by collecting particulate with a yellow post-it note. See id., p. 3. These samples were then tested for "typical" coal dust, soot, fly ash, environmental dusts and pollen. See id., p. 4. Significantly, only one of the 25 samples taken was from the property of a named Plaintiff in this lawsuit. The

---

[9] A true and accurate copy of the Paul Particulate Report is attached as Exhibit D.

remaining 24 samples were taken everywhere from public street signs and fire hydrants on busy thoroughfares to electrical markers and air conditioning units – not from any Plaintiff's property.

Like Mr. Wabeke's Report, Mr. Paul's October 13, 2008 Report "falls woefully short of establishing the necessary evidentiary link between Plaintiffs and Defendants." Nowhere in his report does Mr. Paul provide **any** scientific or other rational basis for his conclusory statement that "the source of the coal dust and soot appears to be the Barton Brands Distillery." Id., p. 2. He did not conduct tests of the substances Plaintiffs allege fell on their property, nor did he do any sort of analysis of where the emissions from Barton Brands' distillery spread once they leave its smokestack. Similarly, Mr. Paul does not account for other possible industrial sources of air contaminants located in Bardstown, much less the possible contribution by cars, truck, railroads, etc., which may be the source of the generic term "soot" in the samples.

Mr. Paul also fails to provide any baseline results showing the standard amount of each substance found in nature as compared to the substances found on Plaintiffs' properties to show the substance appears on Plaintiffs' properties in an unusually high amount. Finally, Mr. Paul provides no analysis of the emissions from Barton Brands' distillery to show that what is being emitted from the Barton Brands' smoke stack is the same or similar to any of the substances collected. Because Mr. Paul has not and cannot provide a substantive correlation between the particulates in the samples taken and their likely source, the essential causal connection between Plaintiffs alleged injuries and Barton Brands' emissions cannot be established.

**C.    Paul's December 2, 2008 Odor Report and January 6, 2009 Odor Reports.[10]**

In November and December, 2008, Mr. Paul took air samples at 21 locations in the Bardstown area "downwind" of the Barton Brands' distillery, which he collected in summa canisters to test for ethanol and acetone and direct-reading measurements for nitrogen dioxide and sulfur dioxide.  See Paul December 2, 2008 Odor Report, p. 1 and January 6, 2009 Odor Report, p. 1.  Based on these samples, Mr. Paul summarily concludes that "(t)he consistent odor downwind of the Distillery and the generally decreasing intensity of the odor and relative concentration of the assessed substances with distance from the Distillery support the conclusion that the Distillery is the source of the odor…." Id., at 5.

Significantly, Mr. Paul consciously chose not to sample anywhere upwind of the Distillery, and no samples were taken unless Mr. Paul first detected an "odor."  See id. More importantly, none of the samples were taken from any of the Plaintiffs' properties, nor did Mr. Paul confirm in any way that the "odor" tested by him is the same "odor" that is being complained of by any of the Plaintiffs.  In fact, in his Report, Mr. Paul refers to the "questionnaires" of "participating litigants," yet only two of the questionnaires cited by Mr. Paul are actually party Plaintiffs in this lawsuit.  See Paul December 2, 2008 Odor Report, p. 2 (e.g., Daniel Ginter and Della Waddlington, neither of whom make any effort to describe the complained of odor), nor is there any evidence that Mr. Paul actually spoke with any of the 35 Plaintiffs.

Moreover, the results of Mr. Paul's testing is quite telling.  Of the 10 samples taken on November 5, 2008, **all** tested well below the respective "odor thresholds"[11] for

---

[10] A true and accurate copy of the Paul December 2, 2008 Odor Report is attached hereto as Exhibit E and a

ethanol, acetone and nitrogen dioxide based on "information from the publication Odor Thresholds for Chemicals and Established Health Standards, American Industrial Hygiene Association ("AIHA"), 1989, ISBN O-932627-34-X.". See id., p. 4 (i.e., "[t]he ethanol concentrations found in the 10 samples were each less than the odor threshold for ethanol;" "[t]he acetone concentrations found in the 10 samples were each less than the odor threshold for acetone;" "[t]he NO$_2$ [nitrogen dioxide] concentrations found in the 10 samples were each less than the odor threshold for NO$_2$").

The results of the second round of testing in November, 2008, produced the same results. All of the samples produced results which were "each *less than* the odor threshold" for ethanol and acetone. See Paul January 6, 2009 Odor Report, p. 4 (emphasis in original).

Despite admittedly having test results below the relevant odor thresholds, Mr. Paul then makes the unsupported conclusory statement that "the apparent odor at each of the 10 sampling locations is attributed to the additive concentration of all the chemical ingredients in the atmosphere discharge plume, and not to any one specific substance." See Paul December 2, 2008 Order Report; see also Paul January 9, 2009 Odor Report (stating a similar conclusory finding for the 11 subject samples). Mr. Paul then concludes that, based on the assessed substances (all of which tested below the odor thresholds) and the unsupported "contribution" of other unnamed and untested substances, "there is a scientific basis for the nuisance odor complaints near the Distillery." See Paul December

true and accurate copy of the Paul January 6, 2009 Odor Report is attached hereto as Exhibit F.
[11] The definition of "odor threshold" is the concentration of a substance in the air where the average person can detect the odor. Businessdictionary.com (the "[c]oncentration of an odorous gas or vapor at which only half of a panel of test subjects (the 'sniffers') can detect the smell). According to Mr. Paul's Report, the odor threshold for ethanol, acetone and NO$_2$ studies, respectively, ranges from 49 to 716 parts of ethanol per million part of contaminated air, on a volume to volume basis (ppmV), of acetone from 3.6 to 699

2, 2008 Odor Report, p. 5 and Paul January 6, 2009 Odor Report, p. 4 ("there continues

to be a scientific basis for the nuisance odor complaints near the Distillery").

 Fundamentally, Mr. Paul's odor reports fail to contain necessary material

information.  First, the reports contain no meteorological data monitoring information.

Rather than using actual meteorological information to quantify and record wind

direction and speed at the time of the sampling, Mr. Paul indicates that nearby plumes

and flags were observed with the naked eye to gauge wind speed and direction.  See Paul

December 2, 2008 Odor Report, p. 3.  There was also no consideration of weather

conditions which could impact the odors tested.  Second, Mr. Paul chose not to sample

anywhere upwind of the Barton Brands Distillery.  Such upwind testing would have

provided comparison data to enable Mr. Paul to make a reliable conclusion about the

source of the odors by eliminating odors blowing from behind and through the Barton

Brands facility.  Similarly, Mr. Paul provided no bench mark information so that a

comparison of the samples measured could be compared to times when no odor was

present.  Finally, there was no consideration by Mr. Paul of other sources or contributing

factors for the odors, nor did Mr. Paul bother to take samples on any of the actual

Plaintiffs' properties.

### STANDARD FOR SUMMARY JUDGMENT

 Under the Federal Rules of Civil Procedure, a summary judgment motion "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with affidavits, if any, show that there is no genuine issue to

any material fact and that the moving party is entitled to a judgment as a matter of law."

---

ppmV, and of $NO_2$ from 0.11 to 0.14 ppmV.  None of these levels were met in any sample taken by Mr. Paul.  See Paul December 2, 2008 Odor Report, p. 2

Fed. R. Civ. P. 56(c). It is well settled that once the moving party has carried its burden, the responsibility then shifts to the non-moving party to prove the existence of any purported genuine issue of material fact. Fed. R. Civ. P. 56(e).

The United States Supreme Court has directed that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(citations omitted). The non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 587 (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## **ARGUMENT**

I.    **PLAINTIFFS' CASES CANNOT PROCEED WITHOUT PROOF THAT BARTON BRANDS CAUSED THE HARM OF WHICH THEY COMPLAIN.**

It is the Plaintiffs' burden to present sufficient evidence to prove their case. However, '[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In this case, it is fair to say that Plaintiffs have not even presented to the Court of evidence of causation or damages.

Plaintiffs have asserted three causes of action against Barton Brands: (1) nuisance (Count I), (2) negligence and/or gross negligence (Count II), and (3) trespass (Count III). While each of these causes of action have separate and distinct elements which Plaintiffs are required to prove, each legal claim rests on the same fundamental premise -- that

Barton Brands is the legal cause of the harm of which the Plaintiffs complain.  See Bailey v. North American Refractories Co., 95 S.W.3d 868, 872 (Ky. App. 2001) (noting that Kentucky has adopted the Restatement of (Second) Torts § 431 standard for legal causation requiring a showing that an activity of Barton Brands was "a substantial factor in bringing about the harm").  The Bailey Court specifically noted:

> The claimant has the burden to prove legal causation . . . .  To find causation, the jury naturally draws inferences from the circumstantial evidence.  These inferences, however, must be reasonable, that is they must "indicate the probable, as distinguished from a possible cause."

Id. (emphasis supplied by the Court.).  "[T]he existence of legal cause . . . becomes a question of law for the court where the facts are undisputed and are susceptible of but one inference."  Id. (citing Huffman v. S.S. Mary & Elizabeth Hospital, 475 S.W.2d 631 (Ky. 1972)).

Summary judgment is wholly appropriate when a plaintiff, like Plaintiffs in this case, have failed to establish that their property has actually been exposed to a foreign particulate and failed to establish that the defendant was the source of the substance or odors of which they complain.

In Leaf River Forest Products, Inc. v. Simmons, 697 So.2d 1083 (Miss. 1996), a case with facts substantially similar to this case, the Mississippi Supreme Court granted summary judgment to a defendant mill operator accused of trespass and nuisance for discharging dioxins onto the plaintiffs' properties because plaintiffs "presented no evidence of dioxin tests conducted **on his property** or on his person."  Id. at 1085 (emphasis added).  Like Plaintiffs here, the Simmons plaintiffs presented experts to salvage their position.  These experts noted the detrimental effect of exposure to dioxins, but merely stated, without evidence that dioxins were actually on the plaintiffs'

properties, "that it was reasonable to assume that dioxin was present on his property." <u>Id.</u> at 1084. The Court found that this expert testimony, which is similar to the conclusory findings of Mr. Paul and Mr. Wabeke, was not sufficient to withstand summary judgment scrutiny. The <u>Simmons</u> Court, in noting the parallel to evidence presented in <u>Leaf River Forest Products, Inc. v. Ferguson</u>, 662 So.2d 648 (Miss. 1995), concluded that the plaintiff had "presented no evidence of dioxin tests conducted on his property" and "held the proof absent such evidence to be insufficient to support a recovery under either a public or private nuisance theory." <u>Simmons,</u> 697 So.2d at 1085 (also applying the same standard to trespass claims and stating "the deficiency in Simmons' proof is even clearer than with regard to the nuisance action, given that trespass requires an actual physical invasion of the plaintiff's property").

As a follow up to the <u>Ferguson</u> and <u>Simmons</u> cases, in <u>Anglado v. Leaf River Forest Products, Inc.</u>, 716 So.2d 543, 549 (Miss. 1998), the Court noted that even when plaintiffs have actually conducted testing on their property (which Plaintiffs have not done in this case), the plaintiffs must still prove an additional step of providing scientific evidence or a "fingerprint" of the tested substance to show that it had actually been discharged from the defendant's mill. <u>Id.</u> at 548. The <u>Anglado</u> Court concluded that because the plaintiffs had failed to provide this proof, there was "no evidence linking" the substance of which they complained to the discharge of the defendant:

> In light of this failure by the plaintiffs to establish any evidence that the defendant's pulp mill is the source of the dioxin found on their properties, we therefore hold that the grant of summary judgment by the trial court was proper.

<u>Id.</u>

The same result should be reached here.  Moreover, the Plaintiffs' negligence claim is similarly flawed given the lack of an evidentiary link between the complained of activity and Barton Brands.  In <u>Herrington v. Leaf River Forest Products, Inc.</u>, 733 So.2d 774 (Miss. 1999), for example, the court affirmed the grant of summary judgment against the plaintiff because she had failed "to present any evidence that even if dioxin in fact caused her Hodgkin's disease, any dioxin present came from the mill owned by Leaf River Forest Products." <u>Id.</u> at 778.  During fact discovery, the plaintiff had refused to submit to testing of her blood.  <u>See id.</u> at 779.  On appeal, after the trial court entered summary judgment against her for lack of evidence, plaintiff asked to be allowed time to subsequently undergo testing.  <u>See id.</u>

The Court, in denying her request, noted that the time for submitting such evidence had long passed and there was a presumption that "any evidence she failed to present was detrimental to her case." <u>Id.</u>  (This Court should reject any similar requests by Plaintiffs for more time to collect samples since the deadline for collecting the same has long passed.)  The <u>Herrington</u> Court therefore upheld the trial court's summary judgment against the plaintiff and held that she had "no scientific evidence that [her] diseases were caused by dioxins or other chemicals of the kind discharged by the Leaf River Mill." <u>Id.</u>  The plaintiff's failure to carry her burden or proof and this total lack of evidence left "no questions of material fact to be decided by a jury." <u>Id.</u>

Like the plaintiffs in the above mentioned cases, the Plaintiffs here have only provided unsupported, conclusory assertions that the particulate fallout and odors of which Plaintiffs complain originate or are linked to any activity of Barton Brands, all with no supporting legal causation to defeat summary judgment.  To the contrary, there is

absolutely no evidence, scientific or otherwise, in the record which establishes that any particulates or odors emitted by Barton Brands intruded onto any Plaintiff's property.  In addition, the completely inadequate testing conducted by Mr. Paul or Mr. Wabeke cannot in any way change this result and will not allow this Court to find causation.

In November 2007, in its Memorandum Opinion denying Plaintiffs' motion for class certification, this Court concluded that Plaintiffs had offered "no evidence whatsoever" to link the particulate and odors complained of by Plaintiffs to the substances emitted by Barton Brands.  See Memorandum Opinion, pp. 7-8 (Dkt. 83). The Court noted that Plaintiffs' evidence consisted of "complaints of residents in the Bardstown area about various substances and odors on their property, a recital of the emissions of the Defendant's facility, and [Mr.] Wabeke's report that it is possible that emissions from Defendant's plant could be related to those substances."  See id., p. 8.  At that hearing up to the present time, Plaintiffs have offered no rehabilitation of Mr. Wabeke and his report or his evidence, which was "insufficient" and "conclusory" at the class certification stage, and is certainly no better today when considering the complete lack of merit of the particulate claims of each individual Plaintiff.  Id., n. 3.

In fact, in the 19 months since this Court denied class certification, Plaintiffs' evidence (or lack thereof) remains essentially unchanged.  Plaintiffs have added the reports of Mr. Paul regarding particulate and odor, but those reports also fall "woefully short of establishing the necessary evidentiary link between Plaintiffs and Defendant," which this Court requires to withstand summary judgment.

As this Court has repeatedly advised Plaintiffs' counsel, Plaintiffs' complaints and emission reports from the Barton Brands Distillery are not enough to prove causation

- - reliable expert evidence linking particulates and odors emitted from Barton Brands to the properties of Plaintiffs is required. Yet, Mr. Paul's evidence falls far short. First, Mr. Paul did not go to the property of each of the Plaintiffs and take samples of particulates in order to compare the composition of the samples to the substances emitted by the Barton Brands Distillery. Nor did he set up an air sampling system on the property of each Plaintiff in order to obtain the chemical composition of the air while that property was allegedly being assailed by the odors on which Plaintiffs base their complaint. Rather than conduct tests or sampling at the properties of the Plaintiffs, Mr. Paul chose to take samples of particulate and odor on busy thoroughfares around the Bardstown area. Nor did he actually speak with any Plaintiff regarding the particulate or odors of which they complain to ensure that what he was testing was consistent with their complaints.

Moreover, this case is not a class action. It is not sufficient for Plaintiffs to generally test substances and odors in the city of Bardstown. On the contrary, each Plaintiff has an <u>individual</u> burden to prove that the particulate and odors on his or her <u>property</u> is caused by the operation of Barton Brands Distillery. Given that Mr. Paul's Report does not prove that Barton Brands is causing fallout or odors to be emitted on any individual Plaintiff's property, Plaintiffs' claims must fail as a matter of law.

Second, nowhere in his reports does Mr. Paul perform any examination of the emissions of Barton Brands to determine how those emissions spread and where any particulates may land. Plaintiffs have set forth no modeling to show where the Barton Brands' emissions go.

Finally, the trace presence of acetone and ethanol in some of the samples taken by Mr. Paul at other locations does not shift the balance from possibility to probability that

the odors complained of are caused by Barton Brands.  In short, Mr. Paul's opinions and reports do not aid in closing this "necessary evidentiary link between Plaintiffs and Defendant" which has dogged Plaintiffs throughout this entire lawsuit.  Mr. Paul's conclusions are insufficient to meet Plaintiffs' individual burdens of proving causation, and summary judgment in favor of Barton Brands is therefore warranted and required.

II.     **PLAINTIFFS' CLAIMS MUST ALSO BE DISMISSED BECAUSE THEY CANNOT PROVIDE ANY RELIABLE EVIDENCE OF DAMAGES.**

In addition to being unable to establish the crucial element of causation, summary judgment should also be granted in favor of Barton Brands on all claims asserted by Plaintiffs because they cannot prove damages as a matter of law.  The Kentucky Legislature has established the measure of damages in a nuisance case.  See KRS 411.560(1).  For a permanent nuisance, "damages shall be measured by the reduction in the fair market value of the claimant's property caused by the nuisance."  Id.  For a temporary nuisance, the measure of damages is "the diminution in the value of the use of the property which resulted from the nuisance."  Id.   This is the same measure of damages required for allegations of trespass and negligence.  See Smith v. Carbide and Chemicals Corp., 507 F.3d 372, 379 (6th Cir. 2007), Chapman v. Beaver Dam Coal Co., 327 S.W. 2d 397, 399-400 (Ky. 1959).

Here, the Court need not even reach the issue of whether the alleged nuisance should be characterized as a permanent or temporary nuisance, because Plaintiffs have failed to provide sufficient and reliable expert evidence, indeed any evidence, as to their damages.  For example, nowhere in the record is there any expert testimony to substantiate that the properties of Plaintiffs had any reduction in fair market value, much less a diminution in the value of the use of the property.  See Adams Construction Co.,

Inc. v. Bentley, 335 S.W.2d 912, 914 (Ky. 1960) (noting that evidence of the value of the
property and the value of comparable properties is required)  As the highest court in
Kentucky has stated:

> We reiterate that the evidence must be in the record to support a finding of
> fact; the court or jury may not supply such absent evidence by drawing
> upon experience aliunde, or naked speculation.

Kentucky Mountain Coal Co. v. Hacker, 412 S.W.2d 581, 583 (Ky. 1967).

The same result should be reached here.  Plaintiffs have set forth no reliable proof
to substantiate their allegations that their properties had diminished in value as a result of
the operation of the Barton Brands.  The discovery and expert disclosure deadlines have
passed, and Plaintiffs have failed to provide a single witness who can substantiate the
statutorily required damages for any of the Plaintiffs' properties involved in this lawsuit.
No individual property valuations or appraisals were conducted, and thus there is no
proof as to the purported diminished value of any Plaintiff's property due to the purported
particulate fallout and odors supposedly emanating from Barton Brands Distillery.  See
Wilhite v. Rockwell International Corp., 83 S.W.3d 516 (Ky. 2002) (concluding that
since expert damages testimony was inadmissible, plaintiffs' damages award failed for
lack of evidence of fair market value compensation).  As such, Plaintiffs cannot meet
their individual burdens of proving damages as a matter of law.

Even if Plaintiffs could meet their causation and damages burden, it bears noting
that this is not a case where Barton Brands recently opened its distillery in the middle of a
residential neighborhood.  The Barton Brands distillery has been in operation in one form
or another at this same location since the 1880s.  When the distillery started up and for
many years after, it operated in the "country" while the city grew up around it.  To the
extent that the properties near the Barton Brands distillery may have been diminished in

22

value, that reduction in value would have been set in place many years ago, far earlier than the purchase date for even the oldest Plaintiff resident of Bardstown. Based on this long history, any diminution of value of Plaintiffs' properties would have been factored into the purchase price when Plaintiffs purchased their properties. In other words, Plaintiffs already purchased their house at a discounted price and are not now entitled to allege a subsequent discount.

Kentucky case law supports this notion. In <u>Consolidation Coal Co. v. Mann</u>, 181 S.W.2d 394, 396 (Ky. 1944), the court stated:

> The courts will presume, when one acquires property under these circumstances, that the purchase price of the property was reduced to compensate the purchaser for any annoyance, inconvenience, or injury the owner thereafter might suffer by reason of the rights and privileges previously granted by the then owner of the fee.

<u>Id.</u> In <u>Mann</u>, the plaintiff purchased property next to a fully operational coal mining operation. The Court found that by purchasing such property, the plaintiff gave the coal mine "virtual license" to continue its existing activities. The Court imputed knowledge to the plaintiff of the activities of the mine:

> When appellee acquired title to the surface, he was fully aware that the property and the entire vicinity in which it is located would be used for the purpose of mining coal, and that mining minerals under his land was only a part of, and incident to, the larger operation extending throughout the entire community. It will be presumed conclusively that he knew, as all men know, that in the mining of coal it is necessary to maintain dumps similar to the one complained of in his petition. The evidence shows that such dumps almost invariably become ignited by spontaneous combustion, in which event the fires cannot be extinguished, and smoke, gases, and noxious odors will emit therefrom. By accepting title to the surface of the property burdened with the rights and privileges acquired by appellant under the deed from appellee's predecessor in title, appellee virtually licensed appellant to maintain the nuisance of which he now complains.

<u>Id.</u>

Here, Plaintiffs were fully aware of the presence of the distillery when they first moved into their homes many years before this lawsuit was ever filed. The Barton Brands distillery was fully operational at the time each and every Plaintiff purchased his or her property. If the subject property values were diminished due to proximity to the distillery, then Plaintiffs purchased their properties at a diminished value and cannot show damages. See Mann, 181 S.W. 2d at 396.

## **CONCLUSION**

In the three years this case has been pending, the Court has given Plaintiffs every opportunity to prove their case against Barton Brands. After hundreds of thousands of dollars in legal fees and the substantial expenditure of time and other resources by all parties, Plaintiffs have utterly failed to satisfy the minimum threshold for causation on any of their claims. Plaintiffs cannot show and have not shown that Barton Brands is the cause of the odors and the particulates of which they complain. Even if Plaintiffs could overcome this insurmountable burden, they have likewise presented no reliable and admissible proof of any damages in this case as a result of anything Barton Brands did. As a result, Barton Brands is entitled to summary judgment on all counts as a matter of law.

Respectfully submitted,

/s/ Janet P. Jakubowicz
Janet P. Jakubowicz
Steven A. Brehm
Greenebaum Doll & McDonald PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky  40202-3197
(502) 589-4200

COUNSEL FOR DEFENDANT
BARTON BRANDS, LTD. n/k/a
CONSTELLATION SPIRITS INC. d/b/a
BARTON BRANDS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via ECF/CM electronic mail on this the 18th day of June, 2009, upon:

Matthew L. White
Mark K. Gray
Franklin Gray & White
The Speed Mansion
505 West Ormsby Avenue
Louisville, Kentucky 40203
(502) 637-6000

and

Peter W. Macuga, II
Steven D. Liddle
Macuga & Liddle, P.C.
975 E. Jefferson Avenue
Detroit, Michigan  48207-3101
(313) 392-0015

COUNSEL FOR PLAINTIFFS

/s/ Janet P. Jakubowicz
COUNSEL FOR DEFENDANT

3380556_1.doc

25