UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CASE NO.: 3:06CV-332-H

JAMES BROCKMAN, et al.                                                                                PLAINTIFFS

V.

BARTON BRANDS, LTD.                                                                                     DEFENDANT

**MEMORANDUM OPINION**

Thirty-five residents of Bardstown, Kentucky ("Plaintiffs")[1] bring this lawsuit alleging nuisance, trespass and negligence by Defendant Barton Brands, LTD., ("Barton Brands"), a distilled spirits producer that operates a coal-fired production facility in the vicinity of Plaintiffs' homes. Plaintiffs request injunctive and monetary relief based on the presence of particles and odors on their property that are allegedly the result of various emissions by Defendant. The matter is before the Court on Defendant's Motion for Summary Judgment and Defendant's Motion to Exclude Plaintiffs' Expert Report of Stephen Paul and Daniel C. Maser. For the reasons set forth below, the Court will partially grant Defendant's summary judgment motion and deny Defendant's motion to exclude the expert report.

I.

Plaintiffs, originally five residents living near Defendant's Bardstown, Ky. plant, filed this lawsuit as a putative class action in July 2006, alleging that more than 2,000 residents near the Barton Brands facility were potentially affected by odors and "particulate matter" originating

---

[1] The original Plaintiffs were Dallas R. Armstrong, Debbie Atwell, David Bobbitt, James Brockman (the individual whose name appears in the style of this case), Phyllis A. Brockman and Irma Livers. All of these individuals have been dismissed from the case by Agreed Order.

from Defendant's liquor distillery.[2] Because this Court's previous decision related to Plaintiffs' class action status is relevant to the present opinion, a brief review of the class certification issue is helpful.

A.

Early in the case, after Plaintiffs indicated they would seek class certification, this Court issued a Scheduling Order bifurcating the class certification issues from the merits issues and allowing the parties six months to proceed with class discovery. At the close of that period, Plaintiffs submitted a memorandum supporting their motion to certify the class; Defendant objected. On November 5, 2007, this Court held a hearing to determine whether the Plaintiffs could meet the Rule 23 requirements for Class Certification. Fed. R. Civ. P. 23(b)(2)-(3).

The Court subsequently denied class certification, based in part on the absence of any verifiable connection between the scope of the class and Defendant's alleged emissions. Our opinion noted the many "evidentiary shortcomings" in the case, including the complete failure of Plaintiffs' then expert, Robert L. Wabeke, to create a causal link between the relevant odors and particles and Barton Brands' emissions. The Court also found that Plaintiffs' "improper class definition" was fatal to their ability to meet the requirements of class certification. Following that opinion, the Court granted Plaintiffs leave to file an Amended Complaint adding more than

---

[2] In the last five years, this Court has presided over more than a half dozen similar cases involving plant emissions, a handful of which remain pending. Though the cases all raised similar claims of nuisance, trespass and negligence, each one has presented unique factual issues – possibly this one more than others. The Court's analysis here is somewhat different from *Dickens v. OxyVinyls*, 631 F.Supp.2d 859 (W.D.Ky. 2009), and *Bell v. DuPont*, 640 F.Supp.2d 890 (W.D.Ky. 2009), because of the presence of actual particles, and not just odors, on Plaintiffs' properties. Also, the expert reports on particles distinguished this opinion from the Court's opinions on class certification in *Burkhead v. Louisville Gas & Electric* (06-CV-282-H) and *Cox v. American Synthetic Rubber* (06-CV-422). The brief discussions of trespass in *Burkhead* and *Cox* were also different from this one in that they were made in the context of class certification, rather than a motion for summary judgment, as here. Last, the close proximity of the many factories in Louisville's Rubbertown neighborhood further complicated the causation issues in many of the Court's previous related opinions.

one hundred new Plaintiffs to the case, though all but 35 have now been dismissed through a series of Agreed Orders. Discovery proceeded on the merits of the case and is now complete; trial is scheduled for February 2010.

B.

Plaintiffs are all residents living within a two-mile radius of the Barton Brands facility at 300 Barton Road in Bardstown. They allege that various chemicals Defendant uses in its distillation process create unpleasant odors. Descriptions of the odors vary, but they have been characterized as a sweet smell, pungent sulfur, yeast, foul and disgusting, raw sewage,[3] rotten eggs, liquor, sour mash and fruity. Plaintiffs further allege that Defendant's coal-fired boiler emits "fallout" particles that blanket their homes, vehicles and yards. Descriptions of the particles are similarly varied and include black soot, black ash, black particles, black rain, black mold, black mud, black fungus and a black oily substance. Some Plaintiffs described the substance as growing. Though the Barton Brands facility has been operating near Plaintiffs' homes for many years, they assert that the problems began around 1999, when Barton Brands was acquired by Constellation Brands.

To support their case that the particles and odors originate at Defendant's plant, Plaintiffs offer various agency and public reports that identify chemicals Defendant releases as part of its distillation process. Plaintiffs have also produced four expert reports, in addition to the report they relied upon in the class certification phase, to analyze the composition of the offending odors and substances. Additionally, Plaintiffs offer documentation of individual accounts of

---

[3] Plaintiffs have since asserted that they are not making claims against Barton Brands for any sewage or sewer-type odors.

how the odors and particles have impacted them[4] and their properties.

Defendant Barton Brands is a liquor distiller selling such brands as Very Old Barton Bourbon Whiskey, Ten High Bourbon, Paul Masson Brandy and others. It has operated the Bardstown distillery at issue since 1879, except for a brief period during prohibition. When it first opened, the distillery was located in a rural area, but over time, the city of Bardstown grew up around it. Today, the distillery is located near other manufacturing and industrial plants including Bardstown Mill, Heaven Hill Distillery and the City of Bardstown's wastewater treatment plan and lift stations.

Barton Brands asserts, and Plaintiffs do not appear to dispute,[5] that the distillery generally meets or exceeds all relevant legal standards relating to air and odor emissions, including state and federal laws and regulations.[6] Furthermore, Barton Brands offers evidence that it uses various systems and equipment, including a "hammer mill" designed to reduce emissions.

Barton Brands argues that multiple failures in Plaintiffs' evidence make this case ripe for summary judgment. Specifically, Defendant complains that Plaintiffs' expert reports fail to establish that Barton Brands is the cause of either the odors or fallout at issue and that Plaintiffs

---

[4] All claims of personal injury were dismissed by Agreed Order in 2007.

[5] Plaintiffs assert that Defendant's plant emits "thousands of tons of chemical products per year," but does not specifically allege that such emissions violate any legal standards. Rather it simply alleges that Plaintiffs complain to various governments and agencies about the fallout and odors. For its part, Defendant argues that it employs "state of the art" air emission control features, but does not appear to assert that its plant emits no odors or particles. It points to a Kentucky Division of Air Quality report that investigated some of the black particles in the area and found the particles were mold, but were likely not harmful or related to Barton Brands.

[6] Defendant does acknowledge one $1,500 fine by the City of Bardstown in May 2006 of an accidental release of brandy into Barton Brands' pretreatment lagoon, but notes that that incident is not relevant to the claims in this case. Furthermore, it acknowledges a self-reported incident in May 2002 where excess sulfur dioxide was emitted. No sanctions were imposed.

have not produced legally sufficient evidence of damages. Alternatively, Barton Brands seeks to exclude a December 2008 expert report by Stephen Paul and Daniel Maser on the basis that it presents an entirely new claim and theory of damages.

II.

Summary Judgment is appropriate where no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party initially bears the burden of demonstrating that an essential element of the non-moving party's case is lacking. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999). The non-moving party may respond by showing that a genuine issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute exists where, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.

Plaintiffs claim that Barton Brands' odors and particles constitute nuisance. Under Kentucky law, a nuisance "arises from the unreasonable, unwarranted, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." *Smith v. Carbide & Chems. Corp.*, 507 F.3d 372, 379 (6th Cir. 2007) (quoting *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky. 1950)) (internal quotations omitted). Its essence is the interference with the use and enjoyment of land. *Id.* Nuisance does not require proof of negligence. *Lynn Min. Co. v. Kelly*, 394 S.W.2d 755, 758 (Ky. 1965). Kentucky consistently treats odor and noise complaints as nuisance claims.

*See, e.g., J.R. Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134 (Ky. 1961) (odors and noise from livestock business); *C. Rice Co. v. Ballinger*, 223 S.W.2d 356 (Ky. 1949) (odors from slaughterhouse); *Hall v. Budde*, 169 S.W.2d 33 (Ky. 1943) (odors from hog farm).

A nuisance claim has two elements: "(1) the reasonableness of the defendant's use of his property, and (2) the gravity of harm to the complainant." *Louisville Ref. Co. v. Mudd*, 339 S.W.2d 181, 186 (Ky. 1960). In Kentucky, there are two types of nuisance: private and public. *W.G. Duncan Coal Co. v. Jones*, 254 S.W.2d 720, 723 (Ky. 1953). A private nuisance affects an individual or a limited number of individuals, while a public nuisance affects the public at large. *Id.* Kentucky codified the definition of private nuisance as existing "if and only if a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property, and thereby causes the fair market value of the claimant's property to be materially reduced." KRS §§ 411.530(2), 411.540(2). Diminution in value of the property is the only proper measure of damages for private nuisance. KRS § 411.560(1). Here, Plaintiffs' nuisance claims are plagued with causation and damages issues.

A.

Plaintiffs rely upon a series of expert reports by Enviroair Consultants, Inc., and its Vice President, Stephen D. Paul, to show causation. Mr. Paul authored or co-authored four reports relating to Plaintiffs' claims, two of which address the odors allegedly produced by the distillery. The odor reports, dated December 2, 2008 and January 6, 2009, tested air samples downwind of the Barton Brands distillery to determine the presence of odor-causing agents such as ethanol and acetone (through air samples) and nitrogen dioxide and sulfur dioxide (through direct-

reading air measurements).  Over the course of three or four days in November and December 2008, Mr. Paul collected 21 samples from various locations downwind of Barton Brands where "the odor was apparent."  However, those reports did not detect any nitrogen dioxide or sulfur dioxide. Though the testing did show some level of ethanol and acetone, *none* of the concentrations found in any of the samples were high enough to meet the odor threshold for ethanol or acetone.  Despite these findings, Mr. Paul's first report concludes that it is the combination of assessed and unassessed substances in the air that produces the objectionable smells. The second report comes to a similar conclusion, further asserting that there "continues to be a scientific basis for the nuisance odor complaints near the Distillery."

Other than Mr. Paul's conclusory paragraphs about the origin of the odors, nothing in his report definitively links the odors of which Plaintiffs complain to Barton Brands, or even a distillery in general.  They do not even establish what substances are creating the odors.  In fact, Mr. Paul's reports come closer to disproving Plaintiffs' theories than proving them, because the suspected substances Plaintiffs assert are coming from the facility are either not present or are not present in high enough concentrations to meet the odor thresholds.  Thus, Mr. Paul's expert reports do not prove causation as to the odors that Barton Brands allegedly creates.

Plaintiffs other two reports, relating to the alleged "particles" created by Barton Brands, provide slightly more evidence of causation.  In an October 13, 2008 report, Mr. Paul collected and tested black particulate matter from various points near the Barton Brands facility.  The subsequent particle testing revealed, among other things, coal dust in each of the 25 samples, soot in 24 samples and fly ash in seven samples.  Mr. Paul concluded that the "composition and

morphology of the analyzed settled particulate collected near the Barton Brands Distillery was consistent with settled particulate matter collected near other coal-fired power plants." In the December 31, 2008 report,[7] Enviroair President Daniel Maser swabbed forty-one surfaces, including metal street signs and cable and newspaper boxes, within a one-mile radius of Barton Brands to determine whether fungus was present. The laboratory results identified the presence of certain fungal species that thrive in ethanol-rich environments. The results section of Maser's report finds that "Enviroair believes that the *A. pullulans* and *Baudoinia sp.* found on the surface swab sampling is present due to the ethanol originating from the Barton Brands Distillery." These two reports, though lacking in some areas,[8] at least connect the particulate matter to substances that could come from the Barton Brands' facility.

Thus, the Court finds that Plaintiffs' expert reports fail to provide sufficient evidence of causation as to odor. Though it is a close call, the expert reports do provide enough evidence of causation as to the detected particulate matter. However, even these reports cannot save Plaintiffs' nuisance claim if the evidence of damages is insufficient.

---

[7] Defendant objects to the December 31, 2008 report, on the grounds that it injects a new theory of recovery into the case. For the reasons stated below, the Court will deny Defendant's motion to exclude the report.

[8] Defendant makes much of the fact that only one of the samples taken by Enviroair came from the property of a current Plaintiff. Though there is some merit to this argument, the Court believes that the results of the sampling, all within the vicinity of the Barton Brands (and all but one of which were closer to it than to the Heaven Hill Distillery), are enough to create an inference that the substances found would be similar to those on Plaintiffs' property.

B.

Kentucky law requires that damages in a nuisance case be measured by a material reduction in fair market value or rental value.[9] KRS § 411.560(1). Plaintiff must introduce a "tangible figure from which the value of the use can be deduced," otherwise the valuation is pure speculation. *Adams Constr. Co., Inc. v. Bentley*, 335 S.W.2d 912, 914 (Ky. 1960). The likely purpose of this requirement is to impose an objective criteria upon an otherwise rather subjective tort. Determination of fair market value ordinarily necessitates expert opinion. *See Jones v. Jones*, 245 S.W.3d 815, 820 (Ky. App. 2008). To express such an opinion, the witness "must possess 'some basis for a knowledge of market values.'" *Id.*

Here, Plaintiffs offer no expert testimony[10] related to the decreased fair market value of their homes. They have produced no data or report that would assist a fact finder in quantifying the property damage caused by the alleged odors and particles. Rather, the *only* evidence Plaintiffs offer of damages consists of their own testimony that the emissions have negatively impacted their property. Even then, none of the proffered testimony goes so far as to quantify the harm to the property. Such blanket statements are not sufficient under Kentucky law to meet Plaintiffs' burden of proving damages. *See Adams*, 335 S.W.2d at 914 (without tangible figures "the court and jury are left to draw entirely on their experience aliunde, or upon naked speculation."). Though Plaintiffs argue that their individual testimony about home values is

---

[9] The measure of damages is slightly different for temporary nuisance than permanent nuisance. See KRS 411.560(1)(a)-(b). However, Plaintiffs' allegations suggest that they complain of a permanent nuisance.

[10] Plaintiffs claim in their brief that they have produced "sound, credible expert testimony supporting their claim for both liability and damages." However, the brief cites no expert testimony related to damages, and the Court can find no evidence of any in the record.

admissible,[11] the question here is not whether the testimony is admissible but whether such vague, non-expert testimony is sufficient evidence of damages. The Court finds that it is not.[12] Thus, Plaintiffs, having failed to offer quantifiable proof of harm to their properties, cannot support their claim for nuisance.

IV.

Plaintiffs also bring a trespass claim. Trespass is an intended or negligent encroachment onto another's property that is not privileged. *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 619-20 (Ky. App. 2003). Kentucky law allows recovery for trespass in three instances: "(1) the defendant was engaged in an ultra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass." *Id.* at 620. Here, Plaintiffs appear to assert intentional trespass,[13] in that Barton Brands knowingly emits some substances in the process of distilling spirits.

As noted above, Plaintiffs' complaint alleges two types of harm: an unpleasant odor and the presence of black particles. The odors alleged in Plaintiffs' Complaint, which are visibly undetectable and transient, are not sufficient to state a claim for trespass, because a trespass only occurs when an object or thing enters a person's property and interferes with his or her

---

[11] Specifically, Plaintiffs cite *Vaughn v. Corbin*, 170 Ky. 426, 427 (Ky. 1916), which is a negligent construction and maintenance case, rather than a nuisance case. *Vaughn* is both legally and factually distinguishable from the case at hand and does not support the proposition that testimony from property owners alone is sufficient to prove damages in a nuisance case.

[12] In fact, this Court has recently rejected even more substantial evidence of damages in a nuisance case. *See Dickens v. Oxy Vinyls*, 631 F.Supp.2d 859 (W.D.Ky. 2009)(rejecting testimony of a licensed assessor who based his opinion that the relevant properties were "worthless" on a one-day tour of the neighborhood and his personal opinions).

[13] Plaintiffs do bring a general negligence claim. To the extent that Plaintiffs' Complaint could be interpreted to assert a negligent trespass claim, it is resolved in Section V, where the Court deals with Plaintiff's general negligence claim.

possession or control. *Bartman v. Shobe*, 353 S.W.2d 550, 555 (Ky. 1962) (stating that a trespass is "more visible and tangible" than a nuisance). However, the black particles alleged in Plaintiffs' Complaint – if caused by Defendant – could constitute trespass, because they have a visible and tangible presence on the property. *Id.* As noted in Section III A, Enviroair's expert reports related to the particulate matter, even though weak in some areas, are sufficient proof of causation to allow Plaintiff's trespass claim to go forward.

The damages required for trespass are different than those for nuisance. While diminution in fair market value is always the appropriate measure of damages for nuisance, a court can award nominal damages in an intentional trespass case for the mere invasion of plaintiffs' property. *See Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 55 (Ky. 2007) (citations omitted) ("where a trespass has been committed upon the property of another, he is entitled at least to nominal damages for the violation of his rights"); *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66 (Ky. 2000) ("even if the plaintiff suffered no actual damages as a result of the trespass, the plaintiff is entitled to nominal damages."). However, to recover compensatory damages, or more than nominal damages, for intentional trespass, property owners must prove actual injury. *Smith*, 226 S.W.3d at 55 (*citing Hughett v. Caldwell*, 313 Ky. 85, 90 (Ky. 1950). Diminution in value is one way to measure damages once an actual injury has been shown. *Smith v. Carbide & Chems. Corp*, 507 F.3d 372, 377-78 (6th Cir. 2007). The Kentucky Supreme Court further explained "actual injury" when answering questions certified to it by the Sixth Circuit:

> Property owners are not required to prove contamination that is an actual and verifiable health risk, nor are they required to wait until government action is taken. An intrusion (or encroachment) which is an unreasonable interference with the property owner's possessory use of his/her property is sufficient evidence of actual

injury. ... The amount of harm, if any, to the individual parcels, and the corresponding measure of actual or compensatory damages will depend upon the proof introduced at trial - an issue of fact.

*Smith*, 226 S.W.3d at 56-7.

Thus, with or without evidence of actual damages,[14] Plaintiffs' claim for trespass can go forward.

V.

Plaintiffs also bring a general negligence claim. Negligence requires the defendant owe the plaintiff a duty of care, breach that duty, and that the breach causes the plaintiff's injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). In Kentucky, "actions for damages to real property caused by another's negligence sound in trespass," not negligence. *Wimmer v. City of Ft. Thomas*, 733 S.W.2d 759, 760 (Ky. Ct. App. 1987) (citing *Commonwealth, Dep't of Highways v. Ratliff*, 392 S.W.2d 913 (Ky. 1965)). That said, Kentucky courts have recognized negligent trespass. *Rockwell*, 143 S.W.3d at 620. There are three basic elements of negligent trespass "(1) the defendant must have breached its duty of care (negligence); (2) the defendant caused a thing to enter the land of the plaintiff, and (3) the thing's presence causes harm to the land." *Id.* (citing Restatement (Second) of Torts § 165 cmt. b).

Plaintiffs' negligence claims fail under either theory, general negligence or negligent trespass, because Plaintiffs have not shown that Defendant breached a duty. Though Plaintiffs' brief alleges that Defendant's distillery emits tons of chemicals into the air each year, they have not produced any evidence that those levels are harmful or exceed what is allowed under federal

---

[14] The Court does not decide at this time whether Plaintiffs evidence is sufficient to prove anything more than nominal damages. To the extent there is any evidence of damages, the measure of actual or compensatory damages will depend on the proof introduced at trial.

and state environmental statutes or regulations. The limited instances of problem emissions by Barton Brands, namely a $1,500 fine by the City of Bardstown for an accidental release of brandy into a pre-treatment lagoon and a self-reported incident in 2002 where excess sulfur dioxide was emitted, are not enough to constitute a breach of duty. For these reasons, Plaintiffs' negligence claim cannot proceed.

VI.

Barton Brands has moved to exclude Plaintiffs' December 31, 2008 expert report by Enviroair on the basis that it belatedly attempts to inject new claims into the lawsuit. The purpose of the report, co-authored by Stephen Paul and Daniel Maser, was to determine whether some of the black particles Plaintiffs complain of are actually fungi associated with the distillery. The authors swabbed 41 surfaces near the Defendant's plant and tested for various types of mold. The results section of the report identify two kinds of molds that thrive in ethanol-rich environments.

Defendant asserts that prior to this report, which it first learned of in January 2009, Plaintiffs had never claimed that their complaints related to mold growth. Instead, Defendant says that whenever Plaintiffs complained of particulate matter, they specifically followed up with a reference to "fallout" emitted from Defendant's coal-fired boiler. Defendant asserts that use of the mold report amounts to an attempt to amend the Complaint, and further argues that such a maneuver at this point would be highly prejudicial. Specifically, Defendant argues that by January 2009, when it received the report, it had completed written discovery, consulted with potential experts based on Plaintiffs' assertion that the coal-fired boiler was creating "fallout," and had taken the deposition of most Plaintiffs. Therefore, to admit the report, according to

13

Defendant, would be to "fundamentally change the entire scope and face of this litigation at the eleventh hour."

Plaintiffs, on the other hand, argue that the expert report focusing on black mold is simply a continuation of previous tests rather than a new theory of recovery. Plaintiffs also assert that mold claims have been part of the case for years because early Plaintiff surveys complain of "black mold."

The evidence here shows that Plaintiffs have consistently alleged problems related to both particulate matter and ethanol-related odors, though the Court agrees they have not been crystal clear in specifically alleging a marriage of the two – that the ethanol emitted by Barton Brands had some relationship with the particulate matter of which Plaintiffs complained. That said, at least a few of the Plaintiffs have described the particulate matter as "black mold." In fact, in its November 2007 Order denying class certification, this Court included the "black mold" allegation in its recitation of the facts of the case. *See* Dkt. No. 83.

It is important to note that despite Defendant's protestations, the expert report at issue was submitted before the close of fact discovery. The purpose of discovery is for the parties to discover facts that are relevant to their case, including the makeup of the particles Plaintiffs claim originate from Barton Brands. Here, Plaintiffs' mold report served that purpose. Though it came near the close of fact discovery and focused on a different source of particulate matter than previous reports, it still remains within the realm of arguments that Plaintiffs have made from the beginning of this case.

For these reasons, the Court finds that the Defendant was on notice that black mold could be one of the theories of the case and declines to treat the December 2009 expert report as an

amendment to the Complaint, as Defendant requests.  Nonetheless, to the extent that Defendant may have been prejudiced by Plaintiffs continued focus on "fallout" and relatively late admission of the mold report, the Court will give Defendant until January 10, 2010, to supplement its expert reports to address the issue of mold.

      The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record